GRAND LODGE A. O. U. W. v. MARY BRAND.

[FILED MAY 20, 1890.]

1. **Fraternal Insurance:** FORFEITURES: INEBRIETY: WAIVER. One B., a resident of N. City, in 1883 was initiated as a member of the order of A. O. U. W., and thereafter paid the dues and

assessments made upon him until October 29, 1886. A certificate was issued to him as a member of the order, which provided that he was "entitled to all the rights and privileges of membership in the Ancient Order of United Workmen, and to participate in the beneficiary fund of the order to the amount of two thousand dollars, which sum shall at his death be paid to his wife, Mary Brand. This certificate is issued upon the express condition that said Joseph Brand shall in every particular, while a member of said order, comply with all the laws, rules, and requirements thereof." The principal defense was that for several years before his death he was addicted to the excessive use of intoxicating liquors. *Held*, 1st, The testimony upon that point being conflicting, that the jury would be justified in finding that he did not use liquor to excess; 2d, That even if the finding had been that he was addicted to the excessive use of such liquor, still, as no objection was made during his lifetime on that or any other ground, and there having been no forfeiture, the objection could not be made after his death to defeat the obligation of the order.

2. ———: EVIDENCE *held* to sustain the verdict.

3. ———: No ERROR in the instructions.

4. ———: FORFEITURE. On the facts stated, *held*, that B. was excused from the payment of dues during his illness, and that there was no forfeiture of the certificate.

ERROR to the district court for Otoe county. Tried below before CHAPMAN, J.

*Billingsley & Woodward*, and *Frank T. Ransom*, for plaintiff in error, cited: *Hellenberg v. District No. 1*, 94 N. Y., 580; *Schunck v. Gegenseitiger, etc.*, 44 Wis., 375; *Masonic Soc. v. Burkhart*, 110 Ind., 192; *Van Bibber v. Van Bibber*, 82 Ky., 350; *Supreme Council v. Curd*, 111 Ill., 284; *Hogins v. Supreme Council*, 18 Pac. Rep. [Cal.], 125; *Hartwell v. Ins. Co.*, 33 La., 1353 [39 Am. Repts., 294]; *Union Mutual Life Ins. Co. v. Reif*, 36 O. St., 596; *Gellatly v. M. B. Soc.*, 27 Minn., 215.

*Edwin F. Warren, John C. Watson*, and *Geo. D. Scofield*, contra, cited, on the questions of waiver and estoppel: *German Am. Ins. Co. v. Etherton*, 25 Neb., 505; *Travel-*

*ers Ins. Co. v. Harvey,* 5 S. E. Rcp. [Va.], 557; *Continental Ins. Co. v. Rogers,* 119 Ill., 474; *Lazensky v. Lodge,* 2 Ry. & Corp. L. J., 314; Bliss, Life Ins., sec. 278; Wood, F. Ins., 383–91; Wharton, Agency, 202, 184; Story, Agency,140; *Pomeroy v. Ins., etc., Inst.,* 9 Colo., 295; *Insurance Co. v. McCain,* 96 U. S., 84; *Home Ins. Co. v. Duke,* 84 Ind., 253; *Brandup v. Ins. Co.,* 27 Minn., 393; *Atkin v. Ins. Co.,* 53 Wis., 136; *Frost v. Ins. Co.,* 5 Denio [N. Y.], 154; *American Central Ins. Co. v. McLanathan,* 11 Kan., 533; *Miller v. Ins. Co.,* 31 Iowa, 216; *William v. Ins. Co.,* 50 Id., 561; *Bevin v. Ins. Co.,* 23 Conn., 244; *Home Mut. Fire Ins. Co. v. Garfield,* 60 Ill., 124 [S. C., 14 Am. Rep., 27]; *Reaper City Ins. Co. v. Jones,* 62 Ill.,458; *Lycoming Ins. Co. v. Barringer,* 73 Ill., 230; *Peoria M. & F. Ins. Co. v. Hall,* 12 Mich., 202; *Short v. Ins. Co.,* 90 N. Y., 16 [S. C., 43 Am. Rep., 138]; *Bennet v. Ins. Co.,* 81 N. Y., 273 [S. C., 37 Am. Rep., 501]; *Whited v. Ins. Co.,* 76 N. Y., 415 [S. C. 32 Am. Rep. 330]; *Buckby v. U. S. Ins. Co.,* 18 Barb. [N. Y.], 541; *Putnam v. Ins. Co.,* 18 Blatchf. [U. S.], 368; Bliss, Life Ins., 278, and cases cited; Wood, Fire Ins., "Waiver," chap. 20; " Estoppel," chap. 21, and cases cited; *Phœnix M. Ins. Co. v. Raddin,* 7 Sup. Ct. Rep., 506; *Deitz v. Ins. Co.,* 8 S. E. Rep. [W. Va.], 616; *North Brit. Ins. Co. v. Steiger,* 26 Ill. App., 228; *Niagara Ins. Co. v. Lee,* 11 S. W. Rep. [Tex.], 1024; *Dwelling House Ins. Co. v. Brodie,* 11 S. W. Rep. [Ark.]; 1016; *Home Pro. Ins. Co. v. Avery,* 5 So. Rcp. [Ala.], 143.

MAXWELL, J.

This is an action upon a certificate of life insurance issued by the plaintiff in error as follows:

"THE GRAND LODGE OF THE ANCIENT ORDER OF
"UNITED WORKMEN, MISSOURI.

"No. 392.                                    $2,000.

"This certificate, issued by the authority of the Supreme Lodge of the Ancient Order of United Workmen, wit-

nesseth: That brother Joseph Brand, a master workman degree member of Otoe Lodge No. 13, of said order, located at Nebraska City, in the state of Nebraska, is entitled to all the rights and privileges of membership in the Ancient Order of United Workmen, and to participate in the beneficiary fund of the order to the amount of two thousand dollars, which sum shall, at his death, be paid to his wife, Mary Brand. This certificate is issued upon the express condition that said Joseph Brand shall in every particular, while a member of said order, comply with all the laws, rules, and requirements thereof.

"In witness whereof, the Grand Lodge of Missouri has caused this to be signed by its grand master workman and recorder, and the seal thereof to be attached, this 8th day of August, 1883.                               "H. L. ROGERS,
                              "*Grand Master Workman.*

"[Grand Lodge of Missouri.  Seal of Grand Lodge A. O. U. W. United we stand, divided we fall.  Instituted 25th of April, 1876.]

"Attest: W. C. RICHARDSON,
                              "*Grand Recorder.*

"We, the undersigned master workman and recorder of Otoe Lodge No. 13, do hereby countersign this certificate and attach the seal of this lodge hereto, rendering the same valid and in force this 20th day of September, 1883.
                              "A. G. OWEN,
                              *Master Workman.*

"[Seal  Otoe Lodge  No. 13, A. O. U. W., Nebraska City, Neb.  A. O. U. W.  Inst. Aug. 18, 1883.]

"Attest: F. MUTTON,
                              " *Recorder.*"

On the trial of the cause the jury returned a verdict in favor of the defendant in error for the sum of $2,231.39 and a motion for a new trial having been overruled, judgment was entered on the verdict.

A large number of defenses are set up in the answer, but three of which seem to be relied upon, viz: That Brand

was addicted to the excessive use of intoxicating liquors; that he was in default in his dues and assessments, and that the lodge had suspended him.

In the preamble to the constitution of the order, which is attached to the petition as an exhibit, the objects of the organization are stated to be:

"Eschewing all reference to nationality, political opinions, and denominational distinctions, or reference, but believing in the existence of a God, the Creator and preserver of the Universe, and recognizing, as a fundamental principle, that usefulness to ourselves and others is a duty which should be the constant aim and purpose of the 'Ancient Order of United Workmen:'

"1st. To embrace and give equal protection to all classes and kinds of labor, mental and physical; to strive earnestly to improve the moral, intellectual, and social condition of its members; to endeavor, by wholesome precepts, fraternal admonitions, and substantial aid, to inspire a due appreciation of the stern realities and responsibilities of life.

"2d. To create a fund for the benefit of its members during sickness or other disability, and, in case of death, to pay a stipulated sum to such persons as may be designated by each member, thus enabling him to guarantee his family against want."

The testimony tends to show that on the 8th of August, 1883, Joseph Brand, the husband of the defendant in error, then residing at Nebraska City, became a member of the order at that place, and that he paid his dues np to the 29th of October, 1886, when $1.25 was due from him, which sum does not appear to have been paid. The reason for this default, as shown by the testimony, will be stated presently. The testimony also tends to show that Brand was a German and addicted to the use of intoxicating liquors before he emigrated to this country; that in 1868 he settled in Nebraska City, and soon after-

wards opened a saloon there, which he continued to run until the high license law of 1881 took effect, when he closed his saloon and thereafter conducted a boarding house in that city; that during this time he was engaged in gardening to quite an extent, and he seems to have carried this business on in connection with the boarding house. The testimony also tends to show that while he was industrious and energetic, yet, during the entire time that he resided at Nebraska City, he was in the habit of using intoxicating liquors. A large number of witnesses testify that he used such liquors to excess, while other witnesses, some of them among the most reliable citizens of that place, testify that they had seen him almost daily while a resident of the city, and never saw him so much under the influence of liquor as to stagger. One witness, who had exceptional means of knowing his habits, testifies that Brand was clownish in his disposition and frequently affected drunkenness when perfectly sober.

The testimony is of such a character as to warrant the jury, who no doubt were acquainted with most of the witnesses, in finding that Brand was not addicted to the excessive use of liquors. But suppose it did show that he was in the habit of drinking to excess? The business in which he had formerly been engaged and his habits as to drinking must have been known, or at least could easily have been ascertained, by the members of the lodge when he was initiated as a member. No objection seems to have been made at that time as to his habits, nor any time afterwards, until less than two months before his death. During all those years he paid his dues and was treated as a brother in good standing. The testimony is undisputed upon this point, and being in good standing, not having, so far as appears, forfeited any of his rights, he was entitled to all the provisions for relief which any other member of that order in good standing who possessed equal claims would have been entitled to.

The professed objects of the society are for mutual benefit of its members. Among other benefits is that of the payment to the widow or other person of a certain sum in case of the death of the member. To many persons of limited means this would be a great inducement to become a member of the order. The assurance that those near and dear to him will be placed beyond the reach of immediate want by reason of the amount received from the order in case of his decease relieves his mind of anxiety on that point. Therefore he meets his pecuniary obligations to the lodge as demands are made upon him. Those demands may at times be difficult to discharge and may require great economy or self-denial to effect the purpose, but nevertheless the dues and assessments are paid and the order, by thus receiving such dues and assessments, is morally as well as legally bound to comply with its contract. Here was a brother in good standing, so far as appears, to whom no objection had been made until during his last sickness. Whatever faults he may have had it would seem to have been too late to make them prominent then, or urge them as an excuse for non-performance of duty. This would be so as between strangers, but the obligation is much stronger when it is that of an order organized for the professed benefit of its members. In other words, facts which are well known or might have been known upon due inquiry, and which, had action been taken thereon by the order, might have resulted in the suspension or expulsion of a member and cancellation of his certificate of life insurance, cannot be ignored until after his death and then be urged to defeat the provision made for his widow or other beneficiary.

The proceedings of all bodies of this kind and all dealings of such orders with their members are to be liberally construed in favor of justice. The word "brother" is not an empty tinkling sound, full of promise to the ear but without substance or form, but is to be construed in the

spirit of fraternal regard and a desire to aid and be aided as far as the professed objects of the order can do. The relation itself implies that no mere technical defense will be set up to defeat a just claim. And in the case at bar the defense of the excessive use of liquor is unavailing.

The testimony tends to show that in October, 1886, Brand was taken sick and that his illness continued up to the time of his death, which occurred on the night of May 31, 1887. Up to the time of his illness he seems to have paid all his dues, as the financier of the order testifies that all dues and assessments were paid up to October 29, 1886, when there was a default in paying $1.25. It appears from the constitution and by-laws of the order that a default in making payments during illness will not work a forfeiture, and as this default is clearly shown to have occurred during his last sickness it did not affect his rights in the premises.

It appears from the by-laws of the order at Nebraska City that " Should any member of this lodge, having been a member of the order for six months, and a member of this lodge three months, be taken sick, and unable to attend his business, notwithstanding the same may be conducted by his wife, children, relatives, or employes, he shall receive the sum of $5 per week for one year, should his sickness continue that length of time. At the expiration of that time he shall receive such a sum per week as the lodge may determine and the case admit, but in no instance shall the benefit be discontinued entirely."

It appears that in February, 1887, Brand being quite ill the lodge awarded him a certain sum per week, but that as objections were made and as he seems to have been in default in paying his assessments a committee of the lodge waited upon him and effected a settlement by which it was agreed that he should receive $32 in lieu of the $5 per week. The testimony also shows that in April of that year the committee called upon him twice to pay the money

but found him too ill to converse on the subject, hence the money was not paid. About this time a motion seems to have been made in the lodge to suspend him, but as such a motion was contrary to the rules the presiding officer refused to put the motion to a vote; and this action constitutes the alleged suspension.

A pretty careful reading of the testimony convinces us that the judgment is right and there is no material error in the instructions. The judgment is therefore

AFFIRMED.

THE other judges concur.