## AGNES SCHLOSSER *vs.* GRAND LODGE BROTHER-HOOD OF RAILROAD TRAINMEN.

*Benefit Societies—Membership Not Forfeited When Failure to Pay Dues Was Caused by Wrongful Act of Local Lodge—Constitution of Order —Local Lodge Agent of Grand Lodge—Instructions to Jury.*

A member of a beneficial association received a certificate entitling the plaintiff in this case, his wife, to a certain sum of money upon his death, if he was then a member in good standing. The association was composed of a grand lodge and subordinate lodges, and its constitution provided that a failure to pay the dues at certain designated times should operate to terminate the membership of the defaulting party. It was also provided that when a member moved to another place where the association had a lodge he should receive a transfer card expiring with the month in which issued and that "if not accepted by the lodge where deposited, a brother holding such transfer card retains his membership in the lodge issuing the card." Plaintiff's husband removed from Baltimore, where his dues were fully paid, to Oil City, and received a transfer card. He presented the card to the lodge there and offered to pay his dues, but no meetings of that lodge were held for five months, although the constitution prescribes that each subordinate lodge shall hold two meetings per month. During the fifth month he was informed by that lodge that his dues could not be there accepted because the transfer card had expired by lapse of time. He then offered to pay his dues to the Baltimore lodge, which refused to receive them on the ground that he was a member of the other lodge. Soon afterwards he died and this action was brought against the Grand Lodge to recover the sum mentioned in the certificate. *Held,*

1st. That although the defendant's constitution provides that in insurance

matters the subordinate lodges shall not act as agents of the Grand Lodge, yet this provision is nugatory because the whole scheme of the organization is at variance therewith and shows that the local lodges are in fact the agents of the Grand Lodge, and consequently if the failure of the plaintiff's husband to pay his dues resulted wholly from the wrongful act of the local lodge in not holding meetings as required by the constitution, the Gramd Lodge cannot avail itself of that wrong in order to resist payment of the certificate.

2nd. That according to the true construction of defendant's constitution, the transfer card must be presented within the month in which it was issued, and if so presented is a proposition for membership and the card continues in force until acted on by the lodge to which presented, and that if the transfer card be rejected, then the applicant retains his membership in the lodge which issued the card, but until such affirmative rejection his dues are not payable in this latter lodge.

3rd. That the jury should have been instructed that if they found that plaintiff's deceased husband presented his transfer card to the Oil City lodge and it was not acted on because of the neglect of that lodge to hold meetings in obedience to the laws of the order ; that he offered to pay his dues there and subsequently, when informed that the transfer could not there be accepted, tendered the dues to the Baltimore lodge, then the defendant is precluded from claiming that he was expelled from the order for non-payment of dues and the plaintiff is entitled to recover.

Appeal from a judgment of the Court of Common Pleas (PHELPS, J.).

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, PEARCE and SCHMUCKER JJ.

*Edgar H. Gans* and *W. Calvin Chestnut* (with whom was *B. H. Haman* on the brief), for the appellant.

*Charles S. Hayden,* for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This suit was brought by Agnes Schlosser against the Grand Lodge Brotherhood of Railroad Trainmen, a foreign unincorporated voluntary beneficial association doing business within the State of Maryland ; and it was brought to recover the amount of money payable to the plaintiff under a beneficiary certificate issued by the association upon the life of

Michael S. Schlosser, the late husband of the plaintiff. The trial of the case in the Court of Common Pleas resulted, under the instructions granted, in a verdict for the defendant and from the judgment thereon entered this appeal has been taken. Whilst the instructions granted did not in explicit terms withdraw the case from the consideration of the jury on the ground that there was no legally sufficient evidence entitling the plaintiff to recover, the practical and necessary effect of the instructions given was a direction to the jury to find for the defendant, and we will, therefore, be obliged to examine the facts somewhat in detail, as from them it must be determined whether the case ought to have been permitted to go to the jury.

It appears that Michael S. Schlosser joined the local or subordinate lodge of the association at Baltimore, in the year eighteen hundred and ninety-three and a beneficiary certificate was thereupon issued to him by the Grand Lodge through the local lodge. Under the constitution of the order and by the terms of the beneficiary certificate Mrs. Schlosser was entitled to receive from the association upon the death of her husband the sum of twelve hundred dollars, if he continued up to the time of his decease to remain in good standing with the subordinate lodge to which he belonged. To be in good standing the member was required to pay certain dues at designated times. The constitution of the subordinate lodges declares that the failure to pay the dues when payable shall operate as an expulsion of the defaulting member and shall forfeit all the rights which his beneficiary would otherwise have been entitled to under the certificate. Among other things it is provided in the constitutions of the subordinate lodges that when a member moves from the place where the lodge to which he belongs is located and secures railroad work elsewhere, he must within ninety days become a member, or apply to become a member, of the local lodge in his new domicile if there be one there ; and the method by which this transfer of membership is made is fully and particularly pointed out in the constitution of the subordinate lodges. As

sections twenty-six and fifty-one especially relate to this feat-
ure of the pending case they will be found transcribed in the
margin.*   In October, eighteen hundred and ninety-nine,
Schlosser moved from Baltimore to Oil City, Pennsylvania.
He had paid his dues to the Baltimore lodge and had secured
a transfer card which was sent to Oil City.   The November
dues were also paid in Baltimore.   When the transfer card
reached Oil City it was hung on the business hook in the Oil
City lodge room, but no meeting was held there during Octo-
ber, November or December, eighteen hundred and ninety-
nine or during January or February of the following year, al-
though the constitution of the subordinate lodges prescribes
that at least two regular meetings per month shall be held.
It appears that Schlosser offered to pay his dues to the Oil City
lodge, but as his transfer card had not been acted on the dues
were not received.   Finally in February, he was informed by
the officers of the Oil City lodge that his transfer card could
not be acted on because it had expired, and he was told that
he would have to settle the December, January and February
dues with the Baltimore lodge.   He thereupon promptly ten-

---

*SEC. 26.  The deposit of a transfer card shall be accepted as a propo-
sition for membership, but no proposition fee or medical certificate shall
be required.   A ballot shall be taken at the meeting such card is pre-
sented, as provided in section 24.   Should the card be accepted it shall be
retained and filed by the lodge, and the Secretary shall notify the Grand
Lodge and the lodge issuing the card, and he shall become a member of
the lodge accepting it, and his membership shall date from the expiration
of the card.   Should a transfer card be rejected, it shall be returned to
the lodge issuing the card and the applicant shall be notified.   In case
the lodge issuing the card, or the Grand Lodge, demand the retention of
said card, it shall be promptly delivered to the lodge so demanding.

SEC. 51.  A brother desiring to join another lodge shall be granted a
transfer card.   Transfer cards expire with the month in which they are
issued.   If not accepted by the lodge where deposited a brother holding
such transfer card retains his membership in the lodge issuing the card,
and his dues and assessments must be paid up to the expiration of the
card before it is granted, and he must be free from all charges.   All as-
sessments due to the Grand Lodge from a brother receiving a transfer
card must be paid to the Grand Secretary and Treasurer by the lodge
issuing the card.   In case of extreme emergency the Master and Secre-
tary may issue such card and report their action to the next regular meet-
ing of the lodge.

dered all those dues to the Baltimore lodge, but the latter re-
fused to receive them upon the ground that Schlosser was a
member of the Oil City lodge.    Thus the Oil City lodge de-
clined through its officers to accept Schlosser's dues because,
as those officers insisted, he was still a member of the Balti-
more lodge; and the Baltimore lodge refused to receive the
same dues because that lodge contended that Schlosser was a
member of the Oil City lodge.    And thus the matter stood on
March the sixth, nineteen hundred, and on that day Schlosser
died.    His widow made a claim for the amount due under the
certificate, but  payment was refused and she then brought
this suit.

Upon this state of facts the Court instructed the jury that
if the transfer card was not presented at a meeting of the Oil
City lodge during the month of October, eighteen hundred
and ninety-nine, and if no other transfer card was ever pro-
cured by Schlosser, then Schlosser remained a member of the
Baltimore lodge, and if his dues were in arrear to that lodge
when he died (as they confessedly were if he then was a mem-
ber of it) the verdict must be for the defendant.    The prayers
which the plaintiff submitted presented the opposite theory
and asked the Court to say to the jury that if Schlosser pro-
cured his transfer card, that the card was not acted on because
of the neglect of the Oil City lodge to hold meetings in obedi-
ence to the laws of the order, that if Schlosser was anxious
and willing to join the Oil City lodge and offered to pay his
dues there, and if he subsequently tendered them to the Balti-
more City lodge when informed that the Oil City lodge would
not act upon his transfer, then the defendant, the Grand Lodge,
is precluded from claiming that Schlosser was expelled from
the order and that the plaintiff was entitled to recover.

It is obvious from these conflicting requests for instructions
that the single question in the case is this : Can the Grand
Lodge, *under the circumstances stated*, lawfully refuse to pay
the amount called for in the benefit certificate ?    The failure
of Schlosser to pay the dues for December, January and
February is the sole ground of defense.    Upon the plaintiff's

theory that failure resulted from the wrongful conduct of the Oil City lodge in omitting to hold meetings at the times its constitution required that it should hold them, and also from the refusal of the Baltimore lodge to accept the dues tendered to it; and was attributable in no way to the negligence or default of Schlosser himself, who was all the while anxious, willing and ready to pay. The whole inquiry comes down to the question: Can the Grand Lodge avail itself of a wrong which its subordinate lodges committed, and avail of that wrong to evade the payment of the sum claimed to be due under the certificate which had been issued to Schlosser? In reply to this question it is insisted by the defendant, *first*, that, conceding the local lodges acted wrongfully, they could not by their action bind the Grand Lodge; and, *secondly*, that the action of the local lodges was, in fact, not wrongful. Now, briefly as to these two positions.

In respect to the first it is maintained that in no sense is the local lodge an agent of the Grand Lodge, and section fifteen of the Constitution of the Grand Lodge is relied on to sustain that contention. The section reads as follows : " In all matters pertaining to the insurance or beneficiary department, neither the subordinate lodges nor the officers thereof shall ever act as the agent or agents of the Grand Lodge, unless especially authorized in writing by the Grand Master or Grand Secretary and Treasurer for that purpose; and without such authority any and all action which may be taken touching said matters by such subordinate lodges, or officers thereof, shall be absolutely void." The whole scheme of the organization is at variance with this provision. The Grand Lodge is the central body. The contract of insurance is made with it and not with the suborinate lodges, but is made with the Grand Lodge through the agency, and exclusively through the agency, of the subordinate lodges. The dues and assessments payable by the members are payable to the Grand Lodge, but are collected for it by the subordinate lodges and are remitted by them to the central body. There is no relation between the Grand Lodge and the members of the order except through

the intervening agency of the subordinate lodges. Every act done by the latter in respect to the insurance feature is an act done for the Grand Lodge. It is difficult to suggest a more clearly defined or more closely interwoven relation of principal and agent than the one existing between the central body and its subordinate branches; and yet in the face of this patent fact the provision quoted from the constitution undertakes to declare that no such relation exists at all. The subordinate lodges are clothed with the duties and entrusted with the powers and authority of agents and no declaration that an agency does not exist or that the principal shall not be answerable for the acts of the agent though done within the scope of the agency, can restrict or limit the liability of the principal. This has often been held in construing the so-called "agency clause" in contracts of insurance. "In some jurisdictions," said the Supreme Court of the United States, the clause " is held to be practically void and of no effect; in others, it is looked upon as a species of wild animal, lying in wait and ready to spring upon the unwary policy holder, and in all, it is eyed with suspicion and construed with great strictness. We think it should not be given effect when manifestly contrary to the facts of the case, or opposed to the interests of justice." *Sup. Lodge K. of Py.* v. *Withers,* 177 U. S. 268. Adjudged cases in great number might be cited to the same effect but it is needless to do so because it is perfectly clear and self-evident, aside from all authorities, that where the facts show the existence of an agency no declaration of the principal that it does not exist can prevail, especially if, by giving effect to the declaration, the interests of justice would be subverted or thwarted. Section fifteen of the Constitution of the Grand Lodge must therefore be brushed aside as having no force or validity.

Now, as to the remaining inquiry concerning the refusal of the local lodges to receive the money tendered to them. The solution of this involves an interpretation of the provisions heretofore set out in the margin. There is no negligence imputed to Schlosser other than his failure to pay the dues for

December, January and February *somewhere.* His applica-
tion for admission to the Oil City lodge was made in due sea-
son and in the prescribed way, and though "transfer cards ex-
pire with the month for which they are issued," nevertheless
if presented during that month they continue in force until
acted on by the lodge to which they have been sent. "If not
accepted," and that phrase means if *rejected,* the applicant re-
tains his membership in the lodge which issued the transfer
card. It was obviously the duty of the Oil City lodge to have
met in October, and to have acted on the transfer card then
hanging on its business hook. Its failure to do this did not
vitiate the transfer card which still continued in force because
it had been presented in proper time. The subsequent fail-
ure of the Oil City lodge to hold any meeting could not nul-
lify the transfer card or cause it to expire, unless the wrong
which that lodge was guilty of in failing to obey the require-
ments of the constitution be treated as tantamount to a rejec-
tion of Schlosser's application. But no such effect can be
given to the non-observance of those requirements. It is
only when the transfer card has been "rejected," after being
voted on, that the member retains his membership in the lodge
which issued the card. There was no rejection of the card
by the Oil City lodge. The card was never acted on because
no meeting was held when meetings should have been held.
To say that the misconduct of the agent—by reason of which
misconduct the insured was prevented from paying his dues
though ready and willing to pay them—relieves the principal
from the obligation to comply with the terms of its contract,
is to declare that these ostensibly benevolent associations are
mere traps to ensnare the confiding and that Courts of justice
will, in instances like this, permit the wrongdoer to profit by
his own wrong. The tender of the dues to the Oil City
lodge was all that Schlosser could do to comply with his part
of the contract, and the refusal of the officers to accpt them
furnishes the Grand Lodge no justification for treating him as
having been expelled by the Baltimore lodge. The miscon-
duct of the Oil City lodge left Schlosser in a position where

he could do nothing more than he did do. He could not pay the dues to the Baltimore lodge because the last named lodge had not been notified that the transfer card had been rejected ; and he, therefore, could not be treated as still a member of the Baltimore lodge. He was entitled to make payment *somewhere*, and nothing but the negligence of the Oil City lodge, which was one of the agents of the Grand Lodge, prevented him from complying with the contract of insurance on his part by the settlement of his dues. If the principal be allowed to take advantage of a forfeiture brought about by the negligence and misconduct of its own agent, the loss will fall upon an entirely innocent party, and the insurer, whose system of organization made it possible for just such a situation to arise, will escape from paying the very sum which it solemnly stipulated that it would pay.

The case should have gone to the jury on the facts in evidence, and if the jury had found the circumstances set forth in the plaintiff's prayers they would have been justified in returning, and, indeed, would have been bound to return a verdict for the plaintiff for the full amount claimed under the benefit certificate.

It follows from the views we have expressed that there was error committed in granting the defendant's prayers and in rejecting the plaintiff's prayers. Because of those errors the judgment will be reversed and a new trial will be awarded.

*Judgment reversed with costs above and below, and new trial awarded.*

(Decided January 16th, 1902.)