**WHIGHAM *v.* INDEPENDENT FORESTERS.**

[75 Pac. 1067.]

AGENCY OF INFERIOR LODGES OF FRATERNAL SOCIETIES.

1. It is usually considered that an inferior branch of a general fraternal or insurance organization, and any officer who is obligated to perform some service for the superior branch, is the agent of the governing body for the purpose of receiving members and collecting the dues and assessments.

BENEFIT SOCIETIES — WARRANTIES — ESTOPPEL.

2. To constitute an estoppel against an insurance order to deny the truth of an application for membership it must appear that the order or its authorized agent had when the application was received, or subsequently acquired, knowledge of the falsity of such application, and thereafter dealt with the applicant as a member in good standing.

VALIDITY OF AGREEMENT TO FORFEIT PAYMENTS.

3. A provision in an application for a policy of insurance in a mutual benefit organization that in case of untruthful statements therein all payments shall be forfeited and the policy be void, is not unreasonable and will be enforced.

From Multnomah: ARTHUR L. FRAZER, Judge.

This is an action by Marie Stewart Whigham against the Supreme Court of the Independent Order of Foresters, which is a fraternal and beneficial society organized and incorporated under the laws of the Dominion of Canada, and having its head office in the City of Toronto. It may and does establish subordinate courts or lodges elsewhere; such local courts being the means by which the society secures its members, and collects the dues, fines, and assessments upon which it relies to pay death claims and expenses. One of its principal purposes is to establish a benefit fund by periodical assessments upon its members, from which, upon satisfactory proof of the death of a member who has complied with its rules and regulations, a sum not exceeding $3,000 shall be paid to the widow or other beneficiary whom the member may designate. By the rules of the order it is provided that any eligible person desiring to become a member of an existing court must make an application for membership on a form provided by the supreme court, and that the application shall be referred to a committee consisting of three members of the local court, whose duty it shall be to investigate as to the character and habits and health of the applicant, and report their findings to the local court. Section 133 of the constitution and laws of the order provides:

"All applicants for membership, in addition to the other requirements, shall not be of bad character, nor lead a dis-

solute life, nor have been convicted of felony, nor be a frequenter of bad company, nor addicted to intoxication, nor of quarrelsome behavior, and must be in good, sound mental and bodily health."

Section 180 provides:

"Any member who shall obtain membership or try to obtain any benefits by false representation in his application, or medical examination, or by other fraudulent means, or by concealing his true age, or by concealing any mental or physical infirmity, or by not disclosing any material fact relating to himself or his family, shall *ipso facto* forfeit all payments he may have made and all benefits whatsoever that he or his heirs or his representatives or his beneficiaries would otherwise have been entitled to receive."

The rules further provide that all applicants for beneficial certificates shall submit to a medical examination, which shall consist of three parts:

"(*a*) The full, explicit and correct answers, in writing, by the applicant to all the questions regarding his personal and family history propounded in the medical examination paper, and the signature of the applicant, in the presence of the examining physician, to the agreement and warranty contained in the said medical examination paper.

(*b*) The physical examination of the applicant by the court physician or other duly authorized examining physician, and the physician's confidential report of the physical condition of the applicant on form No. 3, signed by such physician.

(*c*) The review of such medical examination by and the action thereon of the medical board through its secretary or by a duly authorized assistant secretary."

The medical board referred to consists of three physicians, to be elected at each regular session of the supreme court. Section 218 provides that, should the death of a member be caused by or be due, directly or indirectly, to

44 OR.——35

intemperance or immoral conduct, all claims of whatsoever nature he or his beneficiaries might otherwise have had upon the supreme court shall *ipso facto* lapse and become null and void, and his beneficiary or beneficiaries shall not be entitled to receive and shall not be paid any benefit whatever by the supreme court, or by any other court of the order.

In June, 1898, William Whigham, the plaintiff's husband, made application for membership to a local court of the defendant at Portland, and in his application agreed and warranted :

"All the statements and representations in this application and in my medical examination paper, whether written by me or by another, or by the examining physician, and being material to the contract, are each and every one full, complete and true, and that I have not withheld any circumstance or information material to the contract concerning the past or present state of my health, habits of life, or medical treatment; I agree that the said statements and representations and this warranty shall form the basis of the contract between the Supreme Court of the Independent Order of Foresters and myself and of my membership in the said order ; I agree that if I have made any concealment, misrepresentation or untrue statement, or if I shall become suspended or voluntarily sever my connection with the said order, that the benefit certificate issued on this application and my membership in the order shall be null and void, and all moneys paid thereon shall be forfeited to the said the supreme court."

On June 28th the committee on character appointed by the local court reported favorably, and on June 30th Whigham was examined by the court physician. His examination was reduced to writing and signed by him, and contains the statement that his answers to each and all the questions contained therein, and also those made to the medical examiner, are true and correct, and

" That no intentional omission, concealment, or mental

reservation has been made of any material fact or circumstances relating to my past or present health, habits, or condition, or to my family history, and I agree that the questions and answers herein contained shall form a part of my contract with the Supreme Court of the Independent Order of Foresters."

In the paper as so reduced to writing and signed by Whigham appear the following questions and answers:

"Q. For what diseases have you consulted or been attended by a physician during the past five years?
A. None.
Q. If you have had any of the above, or any other disease, give full particulars as to character, date, duration, and whether you have fully recovered, and the name of the physician who attended you.
A. Never been sick.
Q. Do you drink wine?   A. No.
Q. Do you drink spirits?   A. No.
Q. Do you drink malt liquors?   A. No.
Q. State the daily average amount.   A. Don't use it.
Q. Have you been intoxicated within the past five years?
A. No.
Q. How often within the last year?   A. Not at all.
Q. What has been your habit in this respect during life?
A. Temperate."

The medical examination paper was forwarded to the head office of the defendant, at Toronto, and there approved by the medical board on July 5th. On July 26th Whigham was regularly initiated into the local court at Portland, and on August 26th a beneficiary certificate, signed by the head officers of the defendant, was issued, by which the defendant agreed to pay to plaintiff, on the death of Whigham being established to the satisfaction of the executive council, the sum of $2,000,

" In consideration of the application for membership and of the agreements and statements therein contained, and of the statements, representations and declarations contained in the medical examination paper (in so far as

the said agreements, statements, representations and declarations are material to the contract); and in consideration also of the warranty of the applicant that the same, being material to the risks, are in all respects true and correct; and in consideration also of the provisions of the constitutions and laws enacted by the Supreme Court of the Independent Order of Foresters, and of any and of all amendments thereto adopted from time to time by the said the supreme court, and in consideration also of the declarations and promises contained in the obligation taken by initiates in subordinate courts (each of which, the said application for membership, the medical examination paper, the constitutions and laws and the said obligation, are hereby referred to by the parties hereto and made a part of this contract); and upon the faith and credit of all and each of which agreements, statements, promises, representations, provisions and declarations, and in consideration of the payment by the applicant at the times required of any and of all the assessments, dues, fees, capitation tax and fines, required by the said constitutions and laws to be paid on account hereof."

On September 14th Whigham received and accepted the certificate, and signed a statement thereon expressly agreeing to the conditions and covenants therein contained, and that the constitutions and laws enacted by the defendant, as well as any and all amendments thereto which may be adopted from time to time, should be a part of the contract. Whigham remained a member of the order, paying regularly all assessments due and fines charged against him, and otherwise complying with the rules and regulations, until his death, in February, 1902. Due proof of death was made to the defendant, but it refuses to pay the claim on the grounds, (1) that the answers of Whigham in the medical examination paper that he did not drink wine, spirits, or malt liquors, had not been intoxicated for five years, had not been sick or attended by a physician for that length of time, and that his habits were temperate, were false and fraudulent, and, as a matter of fact, he

was accustomed at intervals to excessive drinking, and had been repeatedly sick with alcoholism, and attended by a physician ; and (2) that his death was caused by intemperance. The trial resulted in a verdict and judgment for the plaintiff, and defendant appeals. REVERSED.

For appellant there was a brief and an oral argument by *Mr. John H. Hall* to this effect :

I. In order that the acts of agents may effect a waiver binding upon the insurance company they must have authority to waive a compliance with the conditions for a breach of which the forfeiture is claimed, or to waive the forfeiture when incurred, or their acts waiving such compliance or forfeiture must have been subsequently approved and ratified by the company: 16 Am. & Eng. Enc. Law, (2 ed.) 942, note,5; *Union Nat. Bank* v. *German, etc. Co.* 71 Fed. 473; *West End Hotel Co.* v. *American Fire Ins. Co.* 74 Fed. 114; *Maier* v. *Fidelity Ins. Co.* 78 Fed. 566; *United States L. Ins. Co.* v. *Smith,* 92 Fed. 503; *Cleaver* v. *Travellers' Ins. Co.* 65 Mich. 527 (8 Am. St. Rep. 908, 32 N. W. 660); *Cook* v. *Standard L. & A. Ins. Co.* 84 Mich. 12 (47 N. W. 568); *Gould* v. *Dwelling House Ins. Co.* 90 Mich. 302 (52 N. W. 754); *Trentor* v. *Pothen,* 46 Minn. 298 (24 Am. St. Rep. 225, 49 N. W. 129); *St. Paul F. & M. Ins. Co.* v. *Parsons,* 47 Minn. 352 (50 N. W. 240); *Williams* v. *Maine State Relief Assoc.* 89 Me. 158, 164 (36 Atl. 63); *Martin* v. *New Jersey Ins. Co.* 44 N. J. Law, 273, 279; *Independent Foresters* v. *Keliher,* 36 Or. 501, 508 (78 Am. St. Rep. 785, 59 Pac. 324).

II. Neither the officers nor members can waive the provisions of the by-laws or of the policy and create an estoppel so as to prevent an association from asserting them : *Northern Assur. Co.* v. *Grand View Bldg. Assoc.* 183 U. S. 308; *Modern Woodmen* v. *Tevis,* 117 Fed. 369; *Supreme Council* v. *Taylor,* 121 Fed. 66; *Supreme Council* v. *Green,* 71 Md.

263–271 (17 Am. St. Rep. 527, 17 Atl. 1048); *Swett* v. *Citizens' Mut. R. Assoc.* 78 Me. 541 (7 Atl. 394); *Miller* v. *Hillsborough F. Assoc.* 42 N. J. Eq. 459 (7 Atl. 895); *Sanders* v. *Cooper*, 115 N. Y. 279 (5 L. R. A. 638, 12 Am. St. Rep. 801, 22 N. E. 212); *Wilcox* v. *Continental Ins. Co.* 85 Wis. 193 (55 N. W. 188); *McFarland* v. *St. Paul F. & M. Ins. Co.* 46 Minn. 519 (49 N. W. 253); *Ætna Ins. Co.* v. *Holcomb*, 89 Tex. 404 (34 S. W. 915); *Independent Foresters* v. *Keliher*, 36 Or. 501, 509 (78 Am. St. Rep. 785, 59 Pac. 324, 1109, 60 Pac. 563); *Stringham* v. *Dillon*, 42 Or. 63 (69 Pac. 1020); *McGowan* v. *Supreme Court of Foresters*, 107 Wis. 462 (83 N. W. 775).

III. The terms "waiver" and "estoppel" as used in reference to insurance contracts are interchangeable, and the former is only another name for the latter : *Insurance Co.* v. *Wolff*, 95 U. S. 326, 333; *Equitable L. Ins. Co.* v. *McElroy*, 83 Fed. 631, 640; *Weidert* v. *State Ins. Co.* 19 Or. 261–280 (20 Am. St. Rep. 809, and note, 24 Pac. 242); *Weed* v. *London & L. Ins. Co.* 116 N. Y. 107 (22 N. E. 229); *Richards* v. *Continental Ins. Co.* 83 Mich. 508 (21 Am. St. Rep. 611, 47 N. W. 350).

IV. An estoppel *in pais* does not operate in favor of everybody; it operates only in favor of a person who has been misled to his injury, and he only can set it up : *Ketchum* v. *Duncan*, 96 U. S. 659; *John Shillito Co.* v. *McClung*, 51 Fed. 868, 876; *Hubbard* v. *Mutual R. Assoc.* 80 Fed. 681, 686.

For respondent there was a brief and an oral argument by *Mr. Henry E. McGinn* and *Mr. Victor K. Strode* to this effect :

(1) In fraternal benefit societies with an insurance feature the officers and members of the subordinate lodges are the agents of the supreme lodge; and this rule of law prevails even though the constitution and by-laws of the

order provide that such persons shall be the agents of the members only, and not of the supreme lodge or superior body: *Cox.* v. *Royal Tribe*, 42 Or. 365, 373 (71 Pac. 73, 60 L. R. A. 620, 95 Am. St. Rep. 752); *Patterson* v. *United Artisans*, 43 Or. 333 (72 Pac. 1095, 1096); *High Court* v. *Schweitzer*, 171 Ill. 325, 327 (49 N. E. 506); *Coverdale* v. *Royal Arcanum*, 193 Ill. 91, 98 (61 N. E. 915); *Grand Lodge* v. *Lachmann*, 199 Ill. 140 (64 N. E. 1022); *Schlosser* v. *Grand Lodge of Trainmen*, 94 Md. 362, 367 (50 Atl. 1048); *Supreme Lodge* v. *Davis*, 26 Colo. 252, 259 (58 Pac. 595); *Alexander* v. *A. O. U. W.* 119 Iowa, 519 (93 N. W. 508); *Grand Lodge* v. *Brand*, 29 Neb. 644, 648–651 (46 N. W. 95); *Modern Woodmen* v. *Lane*, 62 Neb. 89, 97 (86 N. W. 943); *Knights of Pythias* v. *Withers*, 177 U. S. 260, 268; *Modern Woodmen* v. *Colman*, 64 Neb. 162 (89 N. W. 641, 642); *Knights of Pythias* v. *Bridge*, 15 Tex. Civ. App. 196; *Erdman* v. *Order of Herman*, 44 Wis. 376, 381; *Bragaw* v. *Supreme Lodge*, 128 N. C. 354 (38 S. E. 905); *Seehorn* v. *Supreme Council*, 95 Mo. App. 233; *Anderson* v. *Supreme Council*, 135 N. Y. 107, 114 (31 N. E. 1092); *Supreme Tent* v. *Volkert*, 25 Ind. App. 627 (57 N. E. 203, 207); *Order of Columbus* v. *Fuqua*, (Tex. Civ. App.) 60 S. W. 1020, 1022.

(2) The examining physician in benefit societies is the agent of the society, not of the applicant : *Knights of Pythias* v. *Cogbill*, 99 Tenn. 28 (41 S. W. 340).

(3) It will be presumed that the agent who, by the laws of the order, is intrusted with the duty, will communicate to the supreme body any information coming to his knowledge which that body should know: *Supreme Lodge* v. *Davis*, 26 Colo. 252, 259 (58 Pac. 595); *Globe L. Ins. Co.* v. *Wolff*, 95 U. S. 326.

(4) If an insurance society, after knowledge of any default on the part of a member for which it might terminate the contract, recognizes the continued validity of the benefit certificate and treats it as in force, as, by receiving

and retaining assessments, it cannot claim a forfeiture for such previous default, the right having been waived : *Schwarzback* v. *Protective Union*, 25 W. Va. 622, 625 (52 Am. Rep. 227); *Morrison* v. *Odd Fellows Ins. Co.* 59 Wis. 162, 168; *Watson* v. *Centennial L. Assoc.* 21 Fed. 698, 699; *Adrevene* v. *Mutual Reserve Assoc.* 38 Fed. 806; *Mee* v. *Bankers' L. Assoc.* 69 Minn. 210, 215 (72 N. W. 74); *Murray* v. *Benefit L. Assoc.* 90 Cal. 402, 406 (25 Am. St. Rep. 133); *Ball* v. *Mutual Aid Assoc.* 64 N. H. 291; *McGurk* v. *Metropolitan L. Ins. Co.* 56 Conn. 528, 540; *Masonic Assoc.* v. *Beck*, 77 Ind. 203, 207 (40 Am. Rep. 295); *Excelsior Mut. Aid Assoc.* v. *Riddle*, 91 Ind. 84, 87; *Gray* v. *National Benefit Assoc.* 111 Ind. 531, 538 (11 N. E. 477); *Rice* v. *Aid Society*, 146 Mass. 248, 252; *McCormick* v. *Catholic R. Assoc.* 39 App. Div. (N. Y.) 309, 318; *Phœnix L. Ins. Co.* v. *Raddin*, 120 U. S. 183, 193; *Frasier* v. *New Zealand Ins. Co.* 39 Or. 342, 350 (64 Pac. 814); *Warnebold* v. *Grand Lodge*, 83 Iowa, 23, 26; Bacon, Ben. Soc. § 428.

(5) An insurance company or society, before it can claim a forfeiture of its policy from the beginning, as is sought in this case, must return the money received by it as assessments ; and the retention of the same constitutes a waiver of the right of forfeiture : *Coverdale* v. *Royal Arcanum*, 193 Ill. 91 (61 N. E. 915); *Schreiber* v. *German-Am. Ins. Co.* 43 Minn. 367, 369 (45 N. W. 708); *Supreme Tent* v. *Volkert*, 25 Ind. App. 627 (57 N. E. 203, 206); *Masonic Assoc.* v. *Beck*, 77 Ind. 203 (70 Am. Rep. 295); *Fishbeck* v. *Phœnix Ins. Co.* 54 Cal. 422, 426; *Erdman* v. *Order of Herman*, 44 Wis. 376; *McCormick* v. *Catholic Relief Assoc.* 39 App. Div. (N. Y.) 309, 316; *Gray* v. *National Ben. Assoc.* 111 Ind. 531, 538 (11 N. E. 477).

(6) All the elements of a technical estoppel need not exist to constitute a waiver as applied in insurance cases: Bigelow, Estoppel, (5 ed.) p. 660; Bacon, Ben. Soc. § 420; Kerr, Ins. p. 705; Berryman, Dig. Ins. Laws, vol. 4, p. 1624; *Modern Woodmen* v. *Lane*, 62 Neb. 89, 96 (86 N. W. 943);

*Home Fire Ins. Co.* v. *Kuhlman,* 58 Neb. 488 (78 N. W. 936); *Titus* v. *Glens Falls Ins. Co.* 81 N. Y. 410; *Hollis* v. *State Ins. Co.* 65 Iowa, 454 (21 N. W. 774); *Supreme Lodge* v. *Davis,* 26 Colo. 252 (58 Pac. 595); *Mee* v. *Banker's L. Assoc.* 69 Minn. 210 (72 N. W. 74).

MR. JUSTICE BEAN, after stating the facts in the above terms, delivered the opinion of the court.

1. The plaintiff admits in her pleadings that the answers of Whigham on his medical examination were false, but she alleges that the officers and members of the local court had full notice and knowledge thereof, notwithstanding which they admitted him, and continued to recognize him as a member of the order in good standing, and collected assessments and dues from him, and therefore the defendant ought not to be permitted to assert the false warranty as a defense to the action. The subordinate court or lodge of a fraternal society, or an officer thereof, whose duty it is to perform some service for and on behalf of the supreme lodge, is generally regarded as an agent of the governing body, for the purpose of receiving members and collecting assessments and dues. Kerr, Insurance, § 89; *Cox* v. *Royal Tribe,* 42 Or. 365 (95 Am. St. Rep. 752, and note, 71 Pac. 73, 60 L. R. A. 620); *Patterson* v. *United Artisans,* 43 Or. 333 (72 Pac. 1095); *Knights of Pythias* v. *Withers,* 177 U. S. 260 (20 Sup. Ct. 611); *Modern Woodmen* v. *Tevis,* 117 Fed. 369 (54 C. C. A. 293); *Grand Lodge* v. *Lachmann,* 199 Ill. 140 (64 N. E. 1022); *Schlosser* v. *Grand Lodge,* 94 Md. 362 (50 Atl. 1048); *Grand Lodge* v. *Brand,* 29 Neb. 645 (46 N. W. 95); *Bragaw* v. *Supreme Lodge,* 128 N. C. 354 (38 S. E. 905, 54 L. R. A. 602).

2. If, with full knowledge of an applicant's false answers or statements, a local lodge receives and admits him as a member, or if, after his admission, the officer whose duty it is to collect his assessments learns of the false statements,

and thereafter receives the assessments and remits them to the supreme order, the society will, as a general rule, be held estopped from pleading the false statements or representations as a defense to an action on the benefit certificate: Niblack, Ben. Soc. (2 ed.) § 300; *Supreme Lodge* v. *Davis*, 26 Colo. 252 (58 Pac. 595); *Order of Foresters* v. *Schweitzer*, 171 Ill. 325 (49 N. E. 506); *Coverdale* v. *Royal Arcanum*, 193 Ill. 91 (61 N. E. 915); *Mee* v. *Bankers' Life Assoc.* 69 Minn. 210 (72 N. W. 74); *Alexander* v. *Grand Lodge*, 119 Iowa 519 (93 N. W. 508); *Ball* v. *Aid Association*, 64 N. H. 291 (9 Atl. 103); *Supreme Tent* v. *Volkert*, 25 Ind. App. 627 (57 N. E. 203.) But, before there can be an estoppel or waiver, it must appear that the local court or society, or some officer thereof, charged with the performance of some act for the benefit of the supreme order, knew or had notice of the falsity of the answer or warranty contained in the application or examination paper at the time deceased was received as a member, or when his subsequent assessments were received and collected. In the nature of things, there can be no waiver or estoppel without knowledge of the facts upon which it is based. The waiver of a right presupposes a knowledge of the right waived, and, therefore, before defendant can be held to be estopped or to have waived any of its rights by reason of the conduct of a subordinate lodge or its officers, it must be shown that it or they had knowledge of the facts: Kerr, Insurance, § 235; Niblack, Ben. Soc. (2 ed.) § 300; *Lewis* v. *Phœnix Mut. L. Ins. Co.* 44 Conn. 72; *Moerschbaecher* v. *Royal League*, 188 Ill. 9; *Robertson* v. *Metropolitan L. Ins. Co.* 88 N. Y. 541; *Bennecke* v. *Insurance Co.* 105 U. S. 355; *Ellerbe* v. *Faust*, 119 Mo. 653 (25 S. W. 390, 25 L. R. A. 149).

Now, turning to the record in this case, there was no evidence, as we read it, given or offered on the trial, that the local lodge, or any member or officer thereof, knew at the time Whigham was admitted to the order that his

answers to the medical examination were false; nor was there any evidence that knowledge of that fact was brought home to the local lodge or its officers after Whigham's admission. The medical examination paper which contained the questions and answers was not submitted, so far as the evidence shows, to the local lodge; nor were its contents known by the lodge. It was addressed to the executive council of the defendant, and was forwarded direct to the head office at Toronto. Doctor Fenton, the court physician, never saw Whigham until he applied for examination, and knew nothing about his personal habits or history prior to his becoming a member of the order, except as disclosed by the examination. In August, 1899, about a year after Whigham joined the order, the doctor was called to attend him for alcoholism, and again for the same disease in May, July, October, and December, 1900, and January, 1902, but there is no evidence that he knew or had notice that the answers previously made on his medical examination were false. Mr. Sigel, the employer of Whigham, testified that in the spring of 1898 a committee from some society (he did not know what) called upon him to make inquiry about Whigham's character and habits; that he told the committee that he had known Whigham ever since he came to Portland in 1892; that he was an honest, upright man, of good character, except that he would occasionally go on a spree; that he would sometimes go for a month, and sometimes for over a year, without taking a drink, and then he would be off duty for a few days; that when he was drinking he would not attend to business, and would not go to work until he was all right; that he was perfectly sober for the year and a half prior to that time, so far as the witness knew.

David Phillips, the member of the order that indorsed Whigham's application, testified that at the time he was a subordinate officer in the court; that he knew Whigham

for about six months or a year before his application was made, and knew that he had been accustomed to going on sprees occasionally ; that he so informed quite a number of the members, some of whom belonged to the examining committee, but told them that Whigham had taken the Keeley cure and stopped drinking, or otherwise he would not have recommended him for membership ; that the matter was discussed in the lodgeroom at the time, but not officially in the lodge ; that, after Whigham joined the order, it was known by the members that he got drunk occasionally ; that he never drank to such excess as to injure him physically, to the knowledge of the witness; that at one time, while Whigham was the chief officer of the local court, he was in the lodgeroom while under the influence of liquor ; that he (the witness) thought that, if Whigham in fact stopped drinking at the time he made application for membership, he was entitled to join the order, and therefore recommended him ; that neither the witness nor any other member of the local court had any knowledge as to what Whigham's answers were to the questions propounded by the medical examiner. Other witnesses were called to show Whigham's habits while a member of the order, but this is all the testimony bearing on the question of waiver, and, as it does not show that the local lodge or its officers had notice or knowledge at any time of the falsity of the warranty in the application and medical examination papers, there is nothing upon which to base a defense of waiver or estoppel. As it is admitted that under the contract the false statements made by Whigham will prevent a recovery unless they were waived by the defendant, the motion for a nonsuit should therefore have been sustained.

Considerable was said at the argument and in the brief about the court physician and some of the officers of the local lodge knowing of Whigham's being repeatedly in-

toxicated after he became a member of the order, and not reporting such facts, as the rules required; but, as Whigham's conduct while a member is not relied upon as a defense, it is not necessary to inquire at this time as to the effect on the defendant of such knowledge by the officers of the local lodge.

3. It is argued that the defendant cannot insist upon a breach of the warranty, and claim a forfeiture of the policy from the beginning, without returning the money received by it from Whigham as assessments; but the contract and the rules of the order provide that in case of any concealment, misrepresentation, or untrue statement made by Whigham, all moneys paid by him should be forfeited to the defendant.

It follows that the judgment of the court below must be reversed, but, as the defect in the testimony may be overcome on another trial, the cause will be remanded for such further proceedings as may be proper, not inconsistent with this opinion.                                    REVERSED.