[No. 8367.]

## MCRORY, GUARDIAN, V. INDEPENDENT ORDER OF PURITANS.

1. LIFE INSURANCE—*Knowledge of Local Agents Attributed to Insurer.* Action upon a life policy.   Defense, false statements of the insured in his application.   The falsity admitted; but, being known to the medical examiner and local agent, at the time, this knowledge was, by presumption, attributed to the insurer. (461.)

2. ——— *Insurer Estopped to Assert False Statements of Insured in His Application,* where, with knowledge of such falsity, it has accepted the risk and received assessments from the insured. (461.)

3. EVIDENCE—*Presumptions.*   Presumed that the medical examiner of an insurance company is a competent physician, and made a thorough examination of an applicant for insurance, whose application he approved, and that such examination brought to his attention physical ailments and infirmities, of which, in an action upon the policy, were admitted to have then existed. (461.)

*Error to Denver District Court.* Hon. JOHN H. DENISON, Judge.

Mr. CLARK VARNUM, Mr. H. F. JOHNS, Mr. WILLIAM L. VARNUM, Jr., and Mr. T. M. MORROW, for plaintiff in error.

Mr. Edward J. Boughton, and Mr. Karl W. Farr, for defendant in error.

Mr. Justice Garrigues delivered the opinion of the court.

This action was brought by the guardian of John Paul Johns, a minor, against the Independent Order of Puritans, a fraternal association organized and existing under the laws of Pennsylvania, to recover judgment on a limited annuity certificate issued to Anderson B. Johns. The substantial defense interposed by defendant is that the insured in his medical examination for membership in the order, falsely stated and represented that he had never had inflammatory rheumatism, that he had not recently had any severe illness, that he was last attended by a physician ten years prior to making the application for insurance, and that he was not subject to kidney disease; that by reason of such false statements, the policy is void. The reply denied the allegations of new matter set up in the answer. At the conclusion of the testimony at the trial, each side moved for a directed verdict, and it was stipulated between the parties that the jury should be excused, and that upon a determination by the court of the motions, a verdict should be directed accordingly. The jury was excused, and thereafter the court sustained the motion of defendant, and entered judgment of dismissal, to review which action the case is brought here on error.

Defendant is a fraternal organization operating under the lodge system. July 1, 1908, a benefit certificate was issued to Anderson B. Johns in which John Paul Johns, his son, was eventually named as the beneficiary. The certificate was issued upon the usual written application, and medical examination of the insured, wherein he warranted his answers to be true. September 17, 1910, he died, from what cause or disease, the record is silent.

To arrive at an intelligent understanding of the questions involved, and clearly present the situation and circumstances surrounding the transaction, we are of necessity forced to go somewhat into the evidence. One W. C. Danks was the chief witness for the defense, as to the falsity of the statements in the application of the insured. According to his testimony he was intimately acquainted with the deceased during, prior, and after the time of his application for membership; was fully conversant with his physical condition; know that he was suffering from rheumatism, and kidney disease, and that he had come to Colorado for the benefit of his health. He says:

"I first became acquainted with Mr. Johns about the latter part of the year 1907; met him in Denver; we formed a partnership to practice law, commencing the first day of March, 1908, and continuing until March, 1909."

It will be observed that it was during this period the benefit certificate was applied for and issued. The witness was first called to identify the application made by the insured and said:

"I don't believe I was present when this application was signed by Mr. Johns. I was present when the application was forwarded to the home office; I was local secretary of the company at the time; he, Johns, stated to me, ten minutes after he signed it, that he had actually signed the application, and hoped to be a member within a few days; at that time, I was the secretary, and all policies came to me and I delivered them to the persons."

On cross examination the witness gave the following testimony:

Q. You had seen some application in Dr. East's office? A. Yes, sir. Q. Then when he said 'I signed an application,' you assumed merely that the one you saw in Dr. East's office is the one that he referred to, did you? A. He accompanied me there the next morning and we saw that

the letter was sent out immediately.  Q.  But he did not call your attention to any particular application there?  A. I looked it over before it was sent.  Q.  In Dr. East's office? A.  Yes, sir.  Q.  And he showed it to you—Dr. East?  A. Well, I don't remember; it was lying on his table, he might have; Mr. Johns and I examined it.  Q.  You were district officer of the association?  A.  I was."

Thereafter the witness was recalled for the purpose of establishing the falsity of the statements made in the application, and testified regarding the physical condition of the applicant.  On cross examination, he said:

"The examination of the application was just a casual looking it over before it was put in the envelope, I didn't read it.  I rather think I was local secretary at the time, was recognized as secretary at the home office, and performed the duties of secretary with the knowledge and consent of the head officers; carried on the correspondence, if there was any.  I don't remember anything only in remitting money; I remitted money as secretary, collected by me as secretary." "Q.  From July, 1908, to sometime in 1909, you collected assessments on this certificate, did you, or received them? A.  Yes, sir.  Q.  And you remitted them to the home office?  A.  I certainly did.  Q.  The secretary is one of the officials of the local lodge is he not?  A.  I presume he would be.  We had no local lodge; I was just secretary.  Q. Is the medical examiner known as one of the officers of the order?  A.  The by-laws say what the officers of the local council shall be and they include the secretary and medical examiner."

Mr. Danks also testified that he was an attorney at law and represented the defendant, locally, in legal matters in which it was interested, and that he was also a member of the organization.

The medical examiner of the company certified that he had made a careful examination of the applicant; that he

had examined and tested his urine; that in his judgment the applicant had fully and truthfully answered each question; that the risk was first class, and that he recommended the applicant for membership.

It seems to us that the following deductions are warranted by the evidence: First, that Danks was the local secretary and agent of the organization; Second, that he was fully conversant with the physical condition of Johns immediately before, at the time, and after he applied for membership in the defendant company, and when he collected and remitted the assessments on the policy; Third, that he was sufficiently familiar with the application, and with its contents to swear that it was the identical one upon which the membership certificate had been issued, and that he examined it before it was sent to the home office; Fourth, that the medical examiner must have discovered and known that Johns was suffering from kidney disease, and was not an insurable risk.

It is conceded that the statements made by Johns in his application were false; but plaintiff seeks to avoid the defense interposed on this account, upon the ground that the company, through its authorized officers and agents, was fully cognizant of Johns' physical condition at the time, and knew that his statements were false, notwithstanding which, it issued to him its certificate, and continued to collect assessments from him thereon for more than two years after it had this knowledge, and up to the time of his death; that by so doing it waived the false representations and is now estopped from avoiding liability on the policy. Defendant, while recognizing this general rule, contends that it had no knowledge of the facts; that while its local representative Danks was personally fully acquainted with the entire situation, still, his relations with the company were not of such a character that his knowledge could be legally presumed to be the knowledge of the company; that what-

ever information he received was in a personal capacity only, and not as an official of the company; that he had no knowledge of the contents of the application, and did not know that the statements therein made were not in conformity with the true physical condition of the applicant, and therefore it is not bound by his personal knowledge, or precluded from asserting the defense now presented.

The question is not without difficulty. A great many authorities are cited by defendant's counsel in support of its contention, and there seems to be little controversy over the principles of law involved; but counsel are far apart on the proposition of whether the principles are applicable to the situation here presented. This is one of those peculiar cases in which the law is well settled, the evidence practically without conflict and yet a correct solution with absolute certainty of being right, is difficult. We have reached the conclusion that the examining physician and Danks were both agents of the organization, and that their knowledge was the knowledge of the company. It is to be presumed that the medical examiner was competent, possessed the proper qualifications, and made a thorough examination of the insured, which, if properly conducted, would necessarily have brought to his attention the physical ailments of the applicant. Danks knew his physical condition, and was one of the principal witnesses who furnished the evidence for the company to establish the falsity of the statements in the application, which he says he examined before it was sent to the home office. The company must be presumed to have known the facts with which their agents were acquainted when it accepted the risk. For over two years it permitted the insured to remain a member of the association, and to pay assessments, which it received, up to the time of his death. Under these circumstances we conclude the company is estopped from setting up the defense interposed. The following authorities tend to support this conclusion: *Supreme Lodge*

*v. Davis*, 26 Colo. 252, 58 Pac. 595; *Supreme Tent v. Volkert*, 25 Ind. App. 627-643, 57 N. E. 203; *Coverdale v. Royal Arcanum*, 193 Ill. 91, 61 N. E. 915; Order of Foresters v. *Schweitzer*, 171 Ill. 325, 49 N. E. 506; *Kidder v. Supreme Assembly*, 154 Ill. App. 489-491; *Trotter v. Grand Lodge*, 132 Iowa, 513, 109 N. W. 1099, 7 L. R. A. (N. S.) 569, 11 Ann. Cas. 533; *Alexander v. Grand Lodge*, 119 Iowa 519-522, 93 N. W. 508; *Whigham v. Independent Foresters*, 44 Or. 543-553, 75 Pac. 1067; *Pringle v. Modern Woodmen*, 76 Neb. 384, 107 N. W. 756, 113 N. W. 231; *Morrison v. Wisconsin Odd Fellows*, 59 Wis. 162, 18 N. W. 13; *Wiberg v. Minnesota Ass'n*, 73 Minn. 297-304, 76 N. W. 37; *Ball v. Aid Association*, 64 N. H. 291-293, 9 Atl. 103.

The judgment is reversed and the cause remanded with directions to the lower court to enter judgment for the plaintiff.

*Reversed and remanded with directions.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE SCOTT concur.