Argued March 22; affirmed April 25; rehearing denied July 11;
motion to reconsider petition for rehearing denied
September 19, 1933

# WATSON *v.* PACIFIC MUTUAL LIFE INSUR-
## ANCE CO. OF CALIFORNIA

(21 P. (2d) 201, 25 P. (2d) 162)

*A. E. Reames,* of Medford, for appellant.
*Don R. Newbury,* of Medford, for respondent.

KELLY, J.   The questions here presented may be summarized thus:

1.   Do the pleadings and proof support plaintiff's claim that as to insurance payable after October 15, 1929, defendant waived the provisions of the policies requiring insured within 90 days to furnish proof of loss?

2.   Was it error to permit plaintiff to testify in detail as to what constituted his duties as manager and owner of his dyeing and cleaning establishment?

3.   Should interest have been awarded upon unpaid monthly installments of insurance?

4.   Do the pleadings and proof support the judgment for an attorney's fee?

By the terms of the policies in suit, the amounts which would become due in case of total disability were double the amounts of those which would become due if the disability were only partial. For total disability, one policy provided for the payment of $150 per month, and the other for $100 per month.

■ In stating his causes of action plaintiff alleges in the amended complaint:

"That on or about August 15, 1929, the agent of defendant, J. W. Rhodes, who was superintendent of claims for said defendant, acting for and on its be-

half in so doing, personally called upon the plaintiff in Medford, Oregon, and advised plaintiff that the defendant would thereafter pay plaintiff only for partial disability under said policy and advised plaintiff that defendant would no longer pay him total disability under said policy, or for disability consisting of total loss of all business time, * * *.''

''That because of the said advice of the said defendant through its said agent, and because of the fact that defendant sent plaintiff a check for only partial disability on or about September 15, 1929, as aforesaid, which was returned to defendant, and because of the failure and refusal of defendant to make any further payments to him after about September 15, 1929, and its failure to mail him any check whatever for the period from September 15 to October 15, 1929, and for the period of October 15 to November 15, 1929, even though proofs of loss showing and claiming disability payment for total loss of all business time had been furnished defendant, and because of defendant's failure and refusal to furnish plaintiff with any blank forms upon which to make proof of loss and proof of continued disability under said policy, and because of all the matters hereinbefore alleged, plaintiff believed that it would be futile and useless for him thereafter to furnish defendant with any further proofs of continued disability for monthly periods, and because thereof made no proof of loss or of continued monthly disability after about November 15, 1929.''

These allegations are statements of facts, which, if true, constitute a waiver of the right on defendant's part to insist that plaintiff furnish further proofs of disability.

As we read the record, the evidence is equally conclusive.

■ The plaintiff testified that in August of 1929, Mr. Rhodes called upon plaintiff and asked him if he couldn't work some, told him that he, Rhodes, thought

that plaintiff was only partially disabled; made light of plaintiff's coughing up blood and said to plaintiff, "This policy isn't a retiring policy".

A letter was received in evidence dated September 30, 1929, addressed to plaintiff, signed by Mr. J. H. Hill, defendant's claim representative, which letter is known to this record as plaintiff's exhibit No. 6. It acknowledges the return of a draft for partial disability which plaintiff had returned to defendant in a letter demanding payment for total disability. We quote one paragraph from this exhibit:

"I did not understand your letter in view of the fact that Mr. J. W. Rhodes, our Superintendent of Claims, had advised me that he called upon you recently and had a conversation with you about your claim and that it was definitely understood at that time that under no consideration could the company consider your case as one entitled to total disability benefits as your condition and activities placed you in the partial disability class and that payments therefore would be made accordingly on the partial disability basis of fifty per cent."

On October 22, 1929, defendant's claim agent wrote plaintiff as follows:

"We must advise you that the company does not feel justified in continuing the payments on the total disability basis. If, at any time, you desire to accept partial disability indemnity as previously outlined, we will be glad to hear from you and to continue the payments on that basis."

On November 18, 1929, in acknowledging the receipt on November 8th of plaintiff's statement, that of his attending physician and a copy of a report of Dr. Bisaillon, defendant's claim representative stated that Dr. Bisaillon's report does not indicate a condition of necessary, complete total disability. Dr. Bisaillon's

report, thus brought to the knowledge of defendant, does contain this statement:

"I find marked evidence of emhysema, with emphysematous bronchitis and a generalized fibrosis thruout both lungs. His cough, expectoration and dyspnea, as a result of his emphysema, are very marked as yet. In fact, he cannot look forward to any great improvement on account of the fact that his pathology is well established at this time. Mr. Watson has a right heart embarrasment, which is also due to the pathology in his lungs, and this will be present in varying degrees for the remainder of his life."

In the light of this report it cannot be said that as early as November, 1929, defendant was unaware that plaintiff was permanently disabled and that the only question which could arise was with respect to the extent, whether partial or total, of such disability. The concluding statement of defendant's letter of November 18, 1929, is:

"As stated above, the company is willing, at any time, to resume payment on the basis of partial disability."

Defendant's medical witness, Dr. Ernest A. Woods, after testifying that plaintiff was sufferiing from bronchiectasis, and emphysema, testified that, "One who has bronchiectasis always has bronchiectasis. They never get well." And, also, that "The emphysema will remain in this case."

We hold that where it is shown that the insured is permanently incapacitated; that the amount due under his policies depends upon whether his incapacity is total or only partial; that each month for a period of one year payments for total disability were made; that proofs of total disability for a further period of two months were furnished by the insured; and that the

insured then offered to make continuing payments for partial disability but refused to make further payment for total disability on the ground that the insured was only partially disabled, and in the action brought by insured the insurer denies that insured is totally disabled, the insurer thereby waives further compliance by insured with the provision of the policies requiring the insured to furnish further written proofs of disability.

It is argued by defendant that the court encroached upon the province of the jury in determining that proofs of loss were waived. If the facts upon which this conclusion rests were in dispute, this criticism would be worthy of thought; but they are not. The permanency of plaintiff's disability, the offers to compensate him for partial disability, the refusal to pay him the amount which would be due upon a claim of total disability, the furnishing of proofs of loss by plaintiff in support of his claim of total disability for two months of the period during which defendant refused to pay for total disability, the positive denial in defendant's answer of plaintiff's allegation of total disability as to one claim and a denial thereof upon information and belief as to the other claim, the tender of the amount due for partial disability, the continuance of that tender by deposit thereof in court, are all uncontroverted. The conclusion is inescapable that the only question of fact was whether plaintiff's disability was total or only partial. That question was fairly submitted to the jury.

No good purpose can be served by listening to the protestations of a reluctant insurance company as to its supposed lack of intent to waive proofs of loss nor to the voluble asseverations of an aggressive policy-

holder to the effect that the company intended to relinquish such right, when the law is plain, definite and well established, that such a course as here shown constitutes such a waiver. Vol. 7, Cooley's Briefs on Insurance, 6006; Vol. 7, Couch, Cyc. of Insurance Law, § 1579.

No error was committed by the learned trial judge in instructing the jury that defendant had waived the proofs of loss required by the terms of the policies.

■ Over defendant's objection, plaintiff was permitted to detail at some length the nature and extent of the duties he had to perform in reference to his business. Medical experts called by both parties were interrogated as to whether in their opinion plaintiff was totally disabled from performing such duties. It is urged that the duties thus described by plaintiff went beyond the character of employment contemplated by the terms of the policy.

In one of the applications for insurance in answer to the question, "What is your occupation? (describe fully)", plaintiff answered, "Owner and proprietor City Cleaning Works." To the question, "What are the duties required of you? (describe fully stating kind of goods,)" plaintiff answered, "Office duties only, care and management."

In the other application, to the question as to occupation, plaintiff answered, "Manager City Cleaning Works," and to the question as to duties required, he answered, "Office duties only."

In the policy based upon the first mentioned application, plaintiff's occupation is described as "Proprietor Dry Cleaning and Dye Works, superintending only." In the other policy, his occupation is stated as "Manager Cleaning Works, office duties only."

It will be observed that the foregoing provisions of the contracts in suit include in their designation of plaintiff's employment such general terms as care, management, proprietorship, superintendence and office duties. One policy limited the occupation to "superintending only," while the other restricted it to "office duties only". In this state of the record oral proof was admissible to render definite these general terms so that it could be determined whether plaintiff was totally incapacitated from performing the duties of his occupation.

■ As to the allowance of interest upon the unpaid benefits from the date they were due, section 57-1201, Oregon Code 1930, provides that interest shall be payable on all moneys after the same becomes due. The finding of the jury determined that the installments were due and hence interest accrued thereupon. *May Stores, Inc., v. Bishop, et al.,* 131 Or. 670 (282 P. 1080).

■ Objection is made to the allowance of an attorney's fee, but, as we understand it, that objection is based upon the fact that proofs of loss were not furnished. Where proofs of loss have been waived and such waiver established by pleading and proof, effect should be given to the statute providing for attorney's fee in the same way as if such proofs had been duly furnished.

No error appearing, the judgment of the circuit court is affirmed.

RAND, C. J., BELT and ROSSMAN, JJ., concur.

Petition for rehearing denied September 19, 1933

On Petition for Rehearing

(25 P. (2d) 162)

KELLY, J. In a motion for reconsideration of defendant's motion for rehearing, it is again urged that the effect of the original opinion is determinative of the future liabilities of defendant.

■ This contention is met by plaintiff's answering brief. We quote from it:

"The question under consideration by the supreme court was as to whether or not the appellant insurance company had, by it's actions and conduct, waived the submission by respondent to it of monthly proofs of continued disability as a condition precedent to respondent's right to bring an action at law to collect installments for what is termed in the policies sued on, 'total disability'. Whether or not the respondent was permanently disabled or permanently incapacited had nothing to do with whether or not he was entitled to payment for total disability under the policies. And it would have nothing to do with the question of whether or not he was entitled to payment of total disability under the said policies in the future, as the law, as we view it, does not permit a policyholder under a policy such as those in question, to establish in one legal action the fact that he will be totally disabled in the future so as to authorize a judgment or decree that the company shall, in the future, make total disability monthly payments to him.

\*　　\*　　\*　　\*　　\*

"Actions for future installments of monthly disability will be on 'different claims and demands' from those sued upon in this action so that the estoppel can operate only as against matters actually litigated or questions directly in issue in this action. The matter of permanent disability and permanent incapacity was not actually litigated or in issue in this action.

\*　　\*　　\*　　\*　　\*

"At most the question of permanent incapacity or permanent disability was only a fact in controversy, and not a fact in issue".

With this direct assertion on plaintiff's part as to the effect of the original opinion in reference to the issues which may be joined in future litigation between the parties hereto upon the policies in suit, which statement of plaintiff we hereby adopt as an amplification of said opinion, it must be clear that the extent and degree of plaintiff's disability, whether permanent or temporary, total or partial, have not been adjudicated except for the purposes of the instant case.

The original opinion is hereby amplified as above set forth and the motion for reconsideration of defendant's motion for rehearing is hereby denied.