Argued May 24; affirmed June 13, 1933

# RINGO *v.* AUTOMOBILE INSURANCE CO. OF HARTFORD, CONN.

(22 P. (2d) 887)

*James Arthur Powers,* of Portland (Botts & Ebinger, of Tillamook, and Senn & Recken, of Portland, on the brief), for appellant.

*George P. Winslow,* of Tillamook, for respondent.

BAILEY, J. On October 21, 1931, while plaintiff was driving his automobile at the rate of approximately 30 miles an hour on the state highway leading from Tillamook to Sheridan, and when within about three or four miles of Willamina, the accident, which is the basis of this action, occurred. It is explained by the plaintiff as follows:

"Well, we were driving along and just as we approached the bridge, the schoolhouse, and glanced over at the bridge, just in order more, I guess, to see how much time we were making, and the car hit something, I don't know what it was in the road, where it come, the wheel gave a quick jerk, that threw the rear end of the car to the left, the car tipped some, then, of course, naturally it swung the wheel the other way, and the car skidded right around and went across the highway and struck the bank on the right hand side and shot back over the bank and into the river, and it went back, I should judge, 18 feet, something like that, from the bank out into the river before it settled down and completely stopped".

The highway where the accident occurred is close to and parallel with the Yamhill river, which is the stream the plaintiff refers to in the foregoing testimony. The roadbed was macadamized, covered with oil, smooth and without holes or ruts. The accident happened at about 9:30 o'clock at night during a heavy rain storm when driving was extremely difficult.

Under usual conditions the water level of the Yamhill river is about 20 feet below the roadway at the point where the car left the highway. On October 21

the stream was rising fast and after the car came to a stop in the river the water "came up over the back of the seats in the car".

When plaintiff and his wife reached the shore, and before midnight, they gave orders to a garageman at Willamina to recover the car from the river. Due to darkness, the rising water and submerged logs, the automobile remained in the river for some 14 hours, during which time the "working parts" of the car filled with mud and water, the interior and exterior became water-soaked and covered with grease, and the glue in the body of the car dissolved. The bumpers and fenders of the automobile also were damaged.

The defendant was notified at once of the accident and sent its adjusters to make an investigation. They gave instructions to the garageman at Willamina to "put it (the car) in as good condition as" he could. The garageman did some work on the automobile but was unable to "put it back in as good a condition" as it had been before the accident. After this first work was done on the car another adjuster examined it and ordered further work to be done.

Later the plaintiff received information that the insurance company might deny liability, and on October 31, 1931, the attorney for plaintiff wrote a letter to the general agents of the defendant in Oregon referring to the investigation made by the adjusters for the defendant and stating that the plaintiff was willing to supply the defendant with any information that it might desire. In response to this letter these agents replied that the claim had been referred to the home office of defendant for its decision. Thereafter one of the adjusters for the defendant company left a note or memorandum at plaintiff's office stating that the

home office denied all liability on account of plaintiff's claim, except for the damage done to the fenders and bumpers. Plaintiff was unwilling to accept the defendant's interpretation of the policy, and brought this action.

The insurance policy, dated April 24, 1931, so far as material on this appeal, provides as follows:

"In consideration of the declarations in the application, copy of which is attached and made a part hereof, and of the premium provided in said application, The Automobile Insurance Company of Hartford, Connecticut, hereinafter called the Company, does hereby insure

"The Assured named herein, for the term herein specified, against direct loss or damage from the perils specifically insured against herein to the automobile herein described and the equipment usually attached thereto. * * *

"Direct loss or damage to the automobile described, caused solely by accidental collision with another object or by upset, provided: (1) The Company shall not be liable for damage to tires, unless other damage occurs to the automobile. * * *

"Subject to all the terms and conditions of the policy to which this endorsement is attached and in consideration of a premium of $43.50 (which is 50% of the full coverage collision premium under this policy), and the additional payment of $43.50, this policy is extended to cover against loss or damage to the automobile insured if caused solely by accidental collision or upset.

"Upon the occurrence of the first collision or upset which is made the basis of a claim hereunder, the insured shall pay to the company the additional payment applicable to the automobile involved and shall give immediate notice in writing of said collision or upset to the company. * * *"

The policy also provided that within 60 days after loss or damage, unless the time was extended by the

company, the insured should render a statement to the company regarding the place, time and cause of the loss or damage.

The defendant's first assignment of error is the refusal of the trial court to grant its motion for a directed verdict. The reasons advanced in support of this assignment are: (1) that no proof of loss was filed; (2) that the second half of the premium was not paid immediately after the accident nor was it tendered into court; and (3) that the evidence did not show that there had been a collision.

The local agent of the defendant company at Tillamook was notified of the accident the next day after it occurred and he, in turn, on the same day, wrote a letter to the general agents of the defendant for Oregon, stating that he had been notified by telephone of the accident and giving a general account of the same. Other correspondence was had between the attorney for the plaintiff and the general agents of the defendant in Oregon.

■■ The home office denied liability before the 60 days for filing certain specified proof had expired. This disclaimer of liability constituted a waiver of the statement which the assured was to furnish within 60 days after the accident: *Meader v. Farmers' Mutual Fire Relief Ass'n,* 137 Or. 111 (1 P. (2d) 138); *Hahn v. Guardian Assurance Co.,* 23 Or. 576 (32 P. 683, 37 Am. St. Rep. 709). Moreover, the denial of plaintiff's claim was not based on the neglect of plaintiff to notify the defendant of his loss in writing. By basing its refusal on other grounds, and because of the acts of its adjusters, the defendant waived the preliminary notice referred to in its policy of insurance.

■ The policy provided that upon the occurrence of the first collision or upset which was made the basis of

a claim the insured should make an additional premium payment of $43.50 to the defendant. This payment was not made or tendered until after the defendant had filed its answer, in which it disclaimed liability on the ground, among other things, that this balance of the premium had not been paid. Thereupon the plaintiff sent defendant a check for $43.50, which was kept between three and four weeks and then returned to plaintiff's attorney with the statement that the company could not accept the same at that time, "believing it comes too late". No objection was made to the tender on the ground that it was by check rather than currency, and the denial of liability was not based upon the fact that this additional payment had not been made. Moreover until the final rejection of the claim by the home office on the ground that the policy did not cover the accident plaintiff and the defendant were attempting to effect a settlement, and had they been successful, the question of this additional payment would undoubtedly have been taken into consideration in arriving at an adjustment. Since failure to tender this payment was apparently due to oversight on the part of plaintiff, and the defendant has failed to prove that it has been injured by plaintiff's delay in that respect, this objection is without merit.

■ The third reason assigned by the defendant in support of its motion for a directed verdict is that the policy did not cover accidents of the nature of the one here involved, its contention being that there must be a collision, that the damage to the automobile must result therefrom, and that the damage caused to this automobile by being plunged into the river and remaining there some hours does not come within the coverage of the policy.

A number of authorities are cited by defendant in support of this contention, which we shall discuss briefly. In *Wettengel v. United States "Lloyds"*, 157 Wis. 433 (147 N. W. 360, Ann. Cas. 1915A, 626), the automobile accidentally ran off the main road and down a "bank three or four feet into a river". The policy there covered damage to the car by being in collision "with any other automobile, vehicle or object". The court held that "the collision must have been with another automobile, vehicle or somewhat similar object, *ejusdem generis*", and that therefore the damage to the automobile was not covered by the policy.

In *Aetna Casualty & Surety Co. v. Cartmel*, 87 Fla. 495 (100 So. 802, 35 A. L. R. 1013), the owner of the car was driving along the beach and suddenly the ground "gave way under the car and it went down and stuck" in the sand. The court held that the car was not damaged by a collision within the meaning of the policy.

In *Moblad v. Western Indemnity Co.*, 53 Cal. App. 683 (200 P. 750), claim was made for damages due to the fact that the automobile there involved, in order to avoid striking another car, "swerved to the outer edge of the roadway and said roadway gave way, causing said automobile to run down the bank, and, after leaving the roadway to overturn and roll down the side of a mountain". In disposing of the case the court remarked that "the damage to plaintiff's car was caused proximately by its turning over on the edge of the road. Its subsequent revolutions and consequent damage were but the operation of physical laws set in motion when it turned over on the edge of the road. The proximate and only cause of the accident was not a collision, but the upsetting of the automobile".

In *Great Eastern Casualty Co. v. Solinsky*, 150 Tenn. 206 (263 S. W. 71, 35 A. L. R. 1007), the driver of the car suddenly applied the brakes, which caused the machine to skid, swerve, and reverse its position. "The right rear wheel of the automobile collapsed and the vehicle was precipitated upon its right side on the roadbed". The court held that there was no collision with another object, moving or stationary.

The only other case cited by defendant in support of its contention is *Garford Truck Co. v. Miller's National Insurance Co.*, 230 Ill. App. 622, in which a claim was made for damages to an automobile when it struck a hole or depression some ten inches deep in the highway. "In our opinion", the court there said, "when a truck or other vehicle wheel comes into contact with some uneven or irregular part of the road, whether it be an elevation or depression, resulting in the vehicle being thrown off the road, it does violence to the ordinary reasonable meaning of the words to say that it has been an accidental collision with an 'object', namely, the uneven spot in the road".

A little later, in *Bromberg v. Ft. Dearborn Casualty Underwriters*, 231 Ill. App. 323, the plaintiff brought an action to recover on an insurance policy similar to the one involved herein, for damage to his automobile. In that instance the driver, while attempting to turn on a slippery pavement, backed the rear wheels of his car over the edge of the road, causing the car to go over the embankment and down an incline, striking a water main and precipitating the car into a deep hole. The court there held that the plaintiff was entitled to recover on his policy.

Simpson on The Law Relating to Automobile Insurance (2d Ed.), at page 261, § 252, says:

"The weight of opinion is that water and land are objects within the meaning of the law of accident insurance policies, and an automobile which runs into either or both collides with an object": citing many authorities.

Sunderlin on Automobile Insurance, at page 354, § 711, remarks:

"Water and land are objects—physical objects. They are not abstract or imaginary, but tangible, visible, concrete, and real, and may be perceived and apprehended by the mind. The understanding has knowledge of them.

"An insured automobile which runs into either water or land collides with an 'object'".

In *Harris v. American Casualty Co.*, 83 N. J. Law, 641 (85 Atl. 194, 44 L. R. A. (N. S.) 70, Ann. Cas. 1914B, 846), the automobile while crossing a bridge crashed through the guard rails of the bridge and was precipitated into the stream below. The defendant there contended that there was no injury to the car occasioned by reason of the collision of the automobile with the guard rails, that whatever damage occurred was caused by immersion and by contact with the bed of the stream, and that such damage was not covered by the policy of insurance. The court stated that:

"The plaintiff is entitled to recover damages resulting solely from collision with any moving or stationary object. Therefore, he is entitled to damages (stipulated as to amount), unless, within the meaning of the policy, the moving or stationary object must be perpendicular, instead of horizontal. There are no words in the policy which limit the meaning of the object to a perpendicular one. * * *

"Water is certainly an 'object', and it 'moves', and the policy undertakes to insure against damage occasioned by collision with a moving object. The liability it seems would be within the express terms of the policy".

The court then states that, even if there was an ambiguity in the terms of the policy, "it is a familiar rule that the words used in a policy of insurance should be interpreted most strongly against the insurer where the policy is so framed as to leave room for two constructions. * * * Therefore, if there be any doubt as to whether moving water or the physical surface of the land under it, being horizontal objects, are within the terms of the policy, which doubt is not conceded to exist, still the law governing the construction of the sort of contract under consideration comes in aid of the plaintiff's contention, and makes the defendant's liability plain".

In *Power Motor Car Co. v. United States Fire Insurance Co.,* 69 Mont. 563 (223 P. 112, 35 A. L. R. 1028), the driver of the car, in order to avoid a barricade, turned sharply to the right and off the main highway, and about twenty feet therefrom the "automobile ran or dropped" into a ditch and was wrecked. The court, after referring to definitions of the words "collision" and "objects", held that the damage to the automobile was within the coverage of the policy. In discussing the question before the court, the opinion says:

"The policy provides for indemnity against damage for accidental collision with an object, but does not limit it to a collision on the road or highway, nor is any restriction placed upon the kind of object with which the collision occurs; so that any accidental collision at any place, with an object of any nature, would be embraced within its provisions. It is agreed that the occurrence in which the automobile was wrecked was accidental".

In the case of *Great American Mutual Indemnity Co. v. Jones,* 111 Ohio St. 84 (144 N. E. 596, 35 A. L. R. 1023), the driver, in attempting to make a curve on

the highway, overturned the automobile. The policy of insurance contained a clause providing for payment of damages occasioned by accidental collision with another object, but did not specifically refer to damages caused by the car's upsetting. The court said:

"It is to be observed that, after covering 'accidental collision with another object, either moving or stationary', the company in language selected by itself, and employed in the contract proffered to and accepted by the assured, specifically excluded 'ordinary breakage', and also provided as follows: 'Loss or damage to any tire due to puncture, cut, gash, blow-out, or other ordinary tire trouble, or in any event, loss or damage to any tire unless caused in an accidental collision which also causes other loss or damage to the insured automobile, shall not be covered hereby'.
\* \* \*

"Taking into consideration the entire clause of the policy in question, and applying the meaning of the terms 'collision' and 'object' as they seem to us to have been construed by the company itself by the insertion of the exceptions and exclusions stated, we are of the opinion that the injury sustained by plaintiff was covered by the policy".

That part of the policy here under consideration in relation to the additional payment to be made by the insured refers thereto as "50 per cent of the full coverage collision premium under this policy". An exception to the liability of the insurer is damage to tires unless caused in accidental collision or upset "which also causes other loss to the insured automobile". The court, in referring to similar provisions in the case of *Wood v. Southern Casualty Co.*, (Tex. Civ. App.) 270 S. W. 1055, in which instance the automobile came into contact with ruts in the road, causing the wheels of the car to veer and the driver

to lose control of the car, and resulting in the automobile's being overturned and damaged, held that the ruts in the roadway were "objects" whithin the meaning of the policy of insurance and that there was a collision. The court further remarked:

"We think that if the company, in framing its policies, had intended to exclude damages occasioned by overturns or collisions with portions of the roadbed, it would have written such exceptions into the policy. Furthermore, we think that by its statement in the beginning in the wording of the policy, to-wit, 'Complete Coverage Form', it meant to convey to its patrons the idea that the policy was meant to and did cover all such damages as occurred by reason of such accidents as are shown in the instant case".

Compare, also, *St. Paul Fire & Marine Ins. Co. v. American Compounding Co.*, 211 Ala. 593 (100 So. 904, 35 A. L. R. 1018); *Pred v. Employers' Indemnity Corporation*, 112 Neb. 161 (198 N. W. 864, 35 A. L. R. 1003); *Lepman v. Employers' Assurance Corporation*, 170 Ill. App. 379; *Southern Casualty Co. v. Johnson*, 24 Ariz. 221 (207 P. 987); *Universal Service Co. v. American Insurance Co.*, 213 Mich. 523 (181 N. W. 1007, 14 A. L. R. 183); *Polstein v. Pacific Fire Insurance Co.*, 203 N. Y. S. 362.

The authorities are not in entire harmony on the question of what constitutes a collision. The defendant, inasmuch as it was engaged in the business of writing insurance policies on automobiles covering collisions, undoubtedly knew of the various interpretations placed upon similar provisions, and, had it intended to limit the extent of such coverage, it could easily have done so.

There was, within the meaning of the policy, a direct loss or damage to plaintiff's automobile caused solely by accidental collision with another object.

Plaintiff testified positively that the car, while being driven along the highway, struck some object other than the roadbed. Even disregarding this evidence, the proof is that the car plunged into the waters of the Yamhill river and sank to the bottom of that stream. The incident of coming into contact with the water and the bed of the stream constituted a collision with another object.

At the close of the testimony the defendant moved for a directed verdict, which motion was denied by the court. Thereupon the court instructed the jury to return a verdict in favor of the plaintiff and to assess the amount of his damages. The defendant contends that the question of whether or not there was a collision should have been submitted to the jury. What we have already said disposes of this question adversely to defendant's contention.

The plaintiff in his complaint alleges that $250 is a reasonable amount to be allowed him as attorney's fees. This question was submitted to the jury and a verdict returned in the sum of $162.50. Plaintiff now asks that we allow him an additional sum of $87.50 as attorney's fee in this court. Under the authority of *Spicer v. Benefit Ass'n of Railway Employes*, 142 Or. 574 (17 P. (2d) 1107, 21 P. (2d) 187), plaintiff's request is granted.

With the above modification, the judgment appealed from is affirmed.

ROSSMAN, BEAN, and CAMPBELL, JJ., concur.