Argued March 9, affirmed April 13, 1960

# GRAU *v.* NORTHWESTERN MUTUAL INSURANCE CO.

### 350 P. 2d 1082

*Glen McCarty*, Portland, argued the cause for appellant. On the brief were McCarty & Rosacker, Portland.

*Donald E. Hershiser*, Portland, argued the cause for respondent. On the brief were Hershiser, McMenamin, Blyth & Jones, Portland.

Before McALLISTER, Chief Justice, and WARNER, SLOAN and DUNCAN, Justices.

WARNER, J.

This is an action on an insurance policy covering a certain truck belonging to Francis Grau, the plaintiff, insuring against loss caused to the vehicle by collision or upset. From a judgment dismissing plaintiff's complaint, he appeals.

The case was tried to the court without a jury. Plaintiff makes but one assignment of error. He complains of the court's finding that the insurance company did not waive the provisions of its policy requiring plaintiff to make a proof of loss and argues that there was no substantial evidence to support such finding.

The provisions of defendant's policy pertinent to the issue read:

"To pay for direct and accidental loss of or damage to the automobile, hereinafter called loss,

caused by collision of the automobile with another object or by upset of the automobile, * * *.

"When loss occurs, the named Insured shall: * * * (c) file proof of loss with the Company within sixty days after the occurrence of loss, unless such time is extended in writing by the Company, in the form of a sworn statement of the named Insured setting forth the interest of the named Insured and of all others in the property affected, any encumbrances thereon, the actual cash value thereof at time of loss, the amount, place, time and cause of such loss, * * *.

"Payment for loss may not be required nor shall action lie against the Company unless, as a condition precedent thereto, the named Insured shall have fully complied with all the terms of this policy nor until thirty days after proof of loss is filed and the amount of loss is determined as provided in this policy."

On December 17, 1956, the policy then being in force, the insured's vehicle, a Ford truck, was damaged while being driven by plaintiff's brother. It was at the time heavily loaded with pulp wood and as a result of the accident the wood was spread across the highway. Plaintiff, upon being notified of the accident, promptly accompanied a wrecker to the place of the mishap in order to remove the wood from the right of way. When he arrived at the scene, plaintiff merely asked his brother, "How did it happen?" to which the driver replied, "The U-Bolts broke." Because of the urgency for the removal of the wood from the highway, plaintiff did not then further interrogate his brother.

The next morning, without further inquiry of the driver, or without other investigation concerning the circumstances of the accident, plaintiff went to the office of defendant's agent, in St. Helens, Oregon, and made out and signed a notice of loss on a company form

supplied by the agent. The material facts in this notice embody the same matter included in his statement made later to the company adjuster. In the afternoon of the same day, defendant sent its adjuster, Mr. Burton, who met plaintiff at the Ford garage, in St. Helens, to which the truck had been removed. After examining the truck, the investigator prepared a statement based upon the information then supplied and thereafter had it signed by plaintiff.

In so far as it relates to the cause of loss, this reads:

"* * * My brother * * * came up the approach to Cornelius Pass Road and then stopped for the stop sign. As he started up, he turned the truck to the right. When he turned to the right, the U clamps, which hold the box frame to the truck frame, sheared off and let the bed down on the dual wheels. The wheels were turning and when the box dropped on the wheels the box was shoved against the cab of the truck. When the box, loaded with wood, struck the cab, the box fell off the truck, and was damaged. The dual drive of the truck was damaged but the extent of damage is unknown at this time * * *."

After the foregoing had been signed, the adjuster told the plaintiff that the damage was not covered by the policy, as the accident were merely one where a part of the truck collided with another of its parts rather than with another object as stipulated in the policy.

It is this advice denying liability by the investigator upon which the plaintiff depends as excusing himself from the necessity of thereafter filing a formal proof of loss with the insurance company. It is his position that the denial of liability by the investigator was in law a waiver on the part of the company of the proof of loss required by the policy.

Subsequent consultation with the truck driver, about three or four days, perhaps a week, later, disclosed to the plaintiff for the first time that the "U" bolts had broken because of strain resulting from an "upsetting" of the truck rather than a shearing of the "U" bolts caused by the weight of the truck's cargo or weakness of the bolts. Plaintiff, however, never informed the defendant of these new and additional facts, but, instead, on January 10, 1957, filed his complaint in this matter, alleging that the truck was damaged by an "upset" within the meaning of the policy. It will be noticed that when he filed his complaint he still had ample time to have first made a proof of loss, setting forth the later obtained information concerning what he now represents to be the true circumstances of the accident.

Defendant filed an answer with an affirmative defense based on the failure of the plaintiff to file a proof of loss as required by the policy. Plaintiff replied, alleging a waiver of that requirement.

The court found that the vehicle was damaged by an "upset" within the meaning of the policy and that the defendant denied the loss, basing its denial, however, upon the facts of the accident as reported by the plaintiff to its adjuster and, as so reported, they failed to show the loss within the terms of the policy. The court, therefore, concluded that the defendant had not under the circumstances waived the required proof of loss.

We have held that when the provisions of an insurance policy declare that the giving of notice of loss and the making of proofs of loss within a certain time are conditions precedent, as does the policy here sued upon, the insured must comply before bringing an action against the insurer. *Hoffman v. Employer's*

*Liability Corp.*, 146 Or 66, 72, 29 P2d 557; *Canadian Indemnity Co. v. State Automobile Ins. Ass'n*, 174 F Sup 71, 80 (D Ore 1959). See, also, *Bennett v. Metropolitan Life Ins. Co.*, 173 Or 386, 145 P2d 815. But the plaintiff, Grau, claims he was exonerated from that duty by the defendant's denial of liability.

■ It is true that as a general rule a denial of all liability by an insurer, made during the period prescribed by the policy for the presentation of proofs of loss, will ordinarily be considered a waiver of the provisions of the policy requiring proofs to be presented. The reason for the rule being when the insurer has indicated its rejection of the claim, further presentation would be a useless gesture. *Hahn v. Guardian Assurance Co.* (1893), 23 Or 576, 583, 32 P 683; *Meader v. Farmers' Mutual Fire Relief Ass'n* (1931), 137 Or 111, 120, 1 P2d 138; *Ringo v. Automobile Ins. Co.* (1933), 143 Or 420, 424, 22 P2d 887; *Medford v. Pacific Nat'l Fire Ins. Co.* (1950), 189 Or 617, 646, 219 P2d 142, 222 P2d 407, 16 ALR2d 1181. See, also, Anno 108 ALR 903 et seq.

This rule is, however, necessarily subject to a qualification precluding the defense of waiver *when the insurer's denial of liability is the result of a lack of knowledge of material facts known only to the insured.*

■ Waiver is the voluntary relinquishment of a known right. It, therefore, follows that knowledge of the facts is necessary to make it effective. This has long been recognized by this court. *Whigham v. Independent Foresters*, 44 Or 543, 554, 75 P 1067; *Miller v. Head Camp*, 45 Or 192, 195, 77 P 83; *Ward v. Queen City Ins. Co.*, 69 Or 347, 352, 138 P 1067; *Eaid v. National Casualty Co.*, 122 Or 547, 557, 259 P 902; *Mor-*

*ford v. California Western States Life Ins. Co.,* 166 Or 575, 595, 113 P2d 629.

Mr. Justice ROBERT BEAN, speaking to the subject in Whigham, supra, said at p 554:

"* * * In the nature of things, there can be no waiver or estoppel without knowledge of the facts upon which it is based. The waiver of a right presupposes a knowledge of the right waived, and, therefore, before defendant can be held to be estopped or to have waived any of its rights * * * it must be shown that it * * * had knowledge of the facts: * * *."

■ The case of *A. Perley Fitch Co. v. Continental Ins. Co.* (1954), 99 NH 1, 104 A2d 511, 49 ALR2d 156, was decided on issues so nearly identical to the ones in the instant matter as to make it decisive here. There, the court found for the defendant on the following facts: Under a sprinkler leakage policy expressly excluding from coverage all loss caused directly or indirectly by windstorm, notwithstanding the exclusion, the insurer was notified that the damage to the contents of the insured's building was the result of such a storm. Liability was denied on the ground that loss by such cause was not covered by the policies. There, as in the appeal before us, the insured later determined the loss was a result of other causes; that is, water discharged from a sprinkler pipe located in the attic of its building which had frozen, burst and then thawed. As did the plaintiff, Grau, here, the Fitch Co. made no proof of loss predicated upon these later discovered circumstances, but, instead, brought its action without first disclosing these material facts to the insurer.

The New Hampshire court said:

"* * * Waiver is a voluntary relinquishment of a known right and it 'will not be found unless the

insurer has full knowledge of all the material facts.' * * * Here the defendant was ignorant of the most important material facts, including the alleged freezing and bursting of a sprinkler pipe relied upon by the plaintiff in the trial as the cause of its loss, and since it is firmly established that actual knowledge on the part of the insurer is a prerequisite to waiver, it is clear that there can be none in this case. * * *" (*A. Perley Fitch Co. v. Continental Ins. Co.*, supra, 104 A2d at 513)

The same principle enunciated by the New Hampshire case is stated in 16 Appleman, Insurance Law and Practice, 613-5, § 9086:

"As a general rule, in order to waive a policy provision, * * * there must be a prior knowledge of the circumstances, a waiver being the intentional relinquishment of a known right and requiring both knowledge of the existence of the right and an intention to relinquish it. Although the courts are quick to protect an insured or beneficiary, the element of knowledge is considered a fair element to impose for the protection of the insurer. *A waiver will not be implied where the insurer did not have full knowledge of all the material facts. * * *"* (Emphasis supplied.)

See, also, 3 Richards, Insurance (5th ed) 1445, § 430; 29A Am Jur 545, Insurance § 1431, n 20; Anno 49 ALR2d 161, 185.

We have examined the cases cited by the appellant and find them readily distinguishable from the facts present in the instant matter.

By his own admission the plaintiff never reported to the defendant the additional facts concerning the cause of the accident after he had knowledge of them, even though these facts were known to plaintiff within sufficient time to file proofs of loss as required by the

policy. All that was known by the company of the cause of the accident when it denied liability was contained in plaintiff's statement made to its adjuster, which contained nothing to indicate that the accident was the result of an "upset"; understandably so, since at the time of its making the plaintiff himself did not know these additional facts. Since the insurance company was without knowledge of the material facts surrounding the accident, any denial of liability on its part could not constitute a waiver of its right to proofs of loss under the clear terms of the policy.

The judgment of the circuit court is affirmed.