Argued January 22, affirmed in part; reversed
in part and remanded May 14, petition for review
denied July 10, 1979, 287 Or 123

ADAMS et ux, *Respondents, Cross-Appellants,*
*v.*
NORTHWEST FARM BUREAU
INSURANCE COMPANY, *Appellant.*
(No. 21289, CA 11293)

594 P2d 1256

Robert S. Lovlien, Bend, argued the cause for appellant. With him on the briefs were William M. Holmes and Gray, Fancher, Holmes & Hurley, Bend.

Robert L. Nash, Bend, argued the cause for Respondents, Cross-Appellants. With him on the brief were Panner, Johnson, Marceau, Karnopp & Kennedy, Bend.

Before Schwab, Chief Judge, and Thornton, Lee and Gillette, Judges.

THORNTON, J.

---

Lee, J., did not participate in this decision.

## THORNTON, J.

This appeal involves a dispute over the interpretation of the terms of a comprehensive fire insurance policy issued by the defendant company on plaintiffs' farm buildings.

The central question presented is whether plaintiffs' claim for supplementary coverage payments for debris removal ($8,493) and damage to the farm water system ($1,368.40) is limited to the valuation assigned to each of the destroyed buildings.

The trial court held as a matter of law that plaintiffs were entitled to recover for the disputed amounts in addition to the valuations for the destroyed building, and granted plaintiffs partial summary judgment accordingly.

Defendant appeals. Plaintiffs cross-appeal for interest at six percent from the date that the losses were ascertainable, rather than from the date of the judgment.

The essential facts may be summarized as follows:

On July 30, 1976, certain buildings insured under the terms of the fire insurance policy were destroyed by a fire. As a result of the fire, plaintiffs suffered damages to the buildings, suffered damages to personal property, and also incurred expenses in clearing debris and in repairing their domestic water system. The water system served not only the buildings destroyed by the fire but also the remaining buildings.

Under coverage E of the policy a schedule of buildings insured under the policy was included. The schedule of buildings listed each building separately, included the class of each building, the year each building was built, the size and square footage of each building, the rate and the premium for each building, and finally, the "insured amount" of each building. Five of the nine buildings as enumerated in the schedule of buildings insured under coverage E of the policy were destroyed by fire.

The insurance policy provided, in pertinent part:

"COVERAGE E—FARM OUTBUILDINGS, ADDITIONAL DWELLINGS AND CONTENTS

"When so stated in the declarations, coverage is afforded for farm barns, buildings and additional dwellings. Fences (excluding field and pasture fences), corrals, pens, chutes and feed racks attached to a building are covered with that building to a point not exceeding 500 feet therefrom.

"Coverage E also includes foundations, plumbing, electric wiring and stationary heating, lighting and ventilating apparatus and fixtures therein; all permanent fixtures belonging to and constituting a part of the building; if the property of the insured and not otherwise covered, water pumps and equipment including motors, and outdoor equipment appertaining thereto used in the service of the building, also storm doors, storm windows and screens while attached thereto or while stored in any building on the premises, and materials and supplies located on the premises or adjacent thereto, intended for use in construction, alteration or repair of such building.

"SUPPLEMENTARY PAYMENTS

"The following supplementary coverages shall not increase the applicable limit of liability under this policy.

"1. Debris Removal: Covers reasonable expenses incurred in the removal of all debris of the property covered hereunder occasioned by loss thereto for which coverage is afforded.

"* * * * * *."

The limit of liability under Coverage E was $94,500. The policy also provides $6,000 coverage for personalty. The plaintiffs alleged that the defendant was liable for loss in the amount of $73,861.40, which included debris clearing in the amount of $8,493 and domestic water system repair and wiring in the amount of $1,368.40.

The defendant contended that liability under the policy was limited to the sum of $63,900, which was the full insured amount of the buildings destroyed by

fire plus $6,000 for personal property less $100 deductible.

Defendant moved the court for an order of partial summary judgment, contending that the insurance coverage under the contract of insurance did not cover the losses alleged in plaintiffs' amended complaint. Defendant's motion was denied on the ground that there was no factual issue and that, as a matter of law, the policy afforded the coverage alleged by plaintiffs.

The plaintiffs at the time of trial moved for a summary judgment adjudicating that the policy of insurance afforded coverage, as a matter of law, for the cost of debris removal and repairs to the domestic water system. This motion was granted, the trial judge opining that he was bound by the earlier determination that plaintiffs prevailed as to the construction of the contract.

The only issue presented to the jury was the issue of damages incurred by plaintiffs for debris removal and repairs to their domestic water system. The jury returned a verdict in favor of the plaintiffs in the sum of $9,804.43, and an order was entered granting plaintiffs judgment in that amount plus attorney fees and costs.

Defendant claims that the trial court erred by granting the plaintiffs' motion for partial summary judgment without allowing defendant time to marshal affidavits and other support for its contention that there was a genuine issue of material fact precluding the entry of summary judgment. ORS 18.105(3).[1] The fact that the trial court failed to follow the statutory procedure does not necessitate reversal in this instance, however. The construction of a contract is a

---

[1] Plaintiffs contend that defendants, having sought summary judgment on the issue of coverage, cannot appeal the entry of a summary judgment against them on that issue. *Oregon State Bar v. Wright,* 280 Or 693, 706-07, 573 P2d 283 (1977), suggests such a holding, but also involved defendant's failure to respond to plaintiff's motion for summary judgment. We are reluctant to extend *Wright* to the facts in the case at bar.

matter of law if the contract is unambiguous. If the contract is ambiguous, the construction may be a matter of fact. *Busto v. Manufacturers Life Ins. Co.,* 276 Or 707, 712, 556 P2d 96 (1976). However, the determination of whether a contract is indeed ambiguous is, necessarily, a matter of law. If the trial court, as here, correctly determines that an insurance contract is unambiguous as to coverage, summary judgment on *the issue of liability is not reversible error because* there are no issues of fact as to that question.

■ We agree with the trial court that the insurance policy unambiguously provides coverage for debris removal and water system damage, as contracted by plaintiffs.

The main thrust of defendant's argument is that under the terms of the policy each building was in effect insured under a separate contract of insurance;[2] that therefore liability under the policy was limited to the total of the insured amounts for each building destroyed, as set forth in the Schedule of Buildings under coverage E of the policy; that supplementary payments for each building as provided for under

[2] 2 Couch on Insurance 2d § 17.3 (1959), provides in part:

"There is substantial support for the rule that the mere fact that the premium is gross or entire is not the test as to the divisibility of the contract, and does not of itself necessarily prove that the contract is not severable, or prevent it being held divisible where the insurance covers separate items which are separately valued, at least where the breach does not involve fraud or misrepresentation, or where the insurance is upon separate and distinct pieces of property as to which there is no difference in class or rate, and as to which the risks are not so interdependent that the risk on one item cannot be affected without affecting all the subject matter of the insurance. According to some authorities, entirely of premium coupled with entirety of risk does not necessarily call for a conclusion against divisibility of the contract.

"Other authorities place much more emphasis upon the entirety of the premium, even to the extent of holding that if the premium is paid in gross, the contract may be regarded as indivisible, notwithstanding a separate valuation of the different properties covered and the apportionment of the insurance between such properties. Under the rule that a contract is indivisible when the premium is entire, it is also held that it is immaterial that the premium, although payable in a lump sum, is payable at a named rate per hundred dollars of insurance.

" * * * * *." (Footnotes omitted.)

coverage E of the policy, and in particular payments allowed for debris removal, cannot exceed the insured amount of each separate building; that since each building was insured under a separate contract of insurance, the limit of liability under the policy would be limited to the aggregate of the insured amounts of the buildings destroyed.[3]

Defendants' interpretation would afford the policy holder no coverage on additional items such as debris cleanup and damage to the water system in any case involving the total destruction of some but not all of the buildings. Hence, policy provisions expressly providing coverage would be given no effect. We therefore agree with the trial court that the contract unambiguously provides coverage for such items.

Plaintiffs, in their cross-appeal, claim that (1) interest should have been awarded plaintiffs on the $63,900 owed on the buildings and contents from the date payment was due under the policy, and (2) interest should have been awarded plaintiffs on the judgment of $9,804.43 for debris removal and water system repairs from the date payment was due under the policy.

The policy provides, in pertinent part:

"The amount of loss for which the Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company *and* ascertainment of the loss is made either by agreement between the insured and this Company

---

[3] 15 Couch on Insurance 2d § 54.83 (1966) notes:

"A distinction must be made between a policy which speaks in terms of a lump sum obligation or value of the property and one which separately schedules different items of property. In the latter case, each separately treated item of property is in effect covered by a separate contract of insurance and the amount recoverable with respect to a loss affecting such property is determined independently of the other items of property. Thus if a fire insurance policy provides for a certain amount of insurance on a house, and a distinct amount on its contents, the insured cannot, in case of loss, recover more for the contents than the amount named in the policy." (Footnote omitted.)

expressed in writing or the filing with this Company of an award as herein provided.[4]

" * * * [W]ithin sixty days after the loss, * * * the insured shall render to this company a proof of loss, signed and sworn to by the insured * * *." (Emphasis supplied.)

Here, plaintiffs and defendant's agent signed a notice of loss as to the buildings and personalty, but plaintiff would not sign proof of loss statements because the statements included releases of all claims. Generally, interest runs from the time insurance is payable under the terms of the policy. *Bell v. Hanover Fire Ins. Co.,* 107 Or 513, 214 P 340, 215 P 171 (1923). Here, however, because of the lack of proofs of loss, no insurance ever became payable under the terms of the policy.

Defendant conceded liability for the damage to buildings and personal property in the amount of $63,900. It tendered that amount to plaintiffs in exchange for a release of plaintiffs' further claims, and alleged as an affirmative defense that such was the limit of their liability.

■ Proof of loss may be waived.

"It is true that as a general rule a denial of all liability by an insurer, made during the period prescribed by the policy for the presentation of proofs of loss, will ordinarily be considered a waiver of the provisions of the policy requiring proofs to be presented. The reason for the rule being when the insurer has indicated its rejection of the claim, further presentation would be a useless gesture." (Citations omitted.) *Grau v. Northwestern Mut. Ins. Co.,* 221 Or 240, 245, 350 P2d 1082 (1960).

In *Grau,* the plaintiff had not disclosed to the insurer all the material facts concerning causation of the accident allegedly covered, so the court held that the insurer had not effectively waived proof of loss by denying liability.

---

[4] *See* ORS 743.657.

Here, in contrast, there is no comparable factual basis for defendant's denial of liability; on the contrary, the parties agree on the facts of the incident and disagree only on the import of the terms of the policy. The fact that the denial of liability was only partial does not prevent a finding of waiver, where the denial is not based on failure of the insured to notify the insurer of the loss. *See Ringo v. Automobile Ins. Co.,* 143 Or 420, 22 P2d 887 (1933). Waiver may also be found in a concession by the insurer that a certain amount is due on account of the loss of given items. *See Watson v. Pacific Co.,* 144 Or 413, 21 P2d 201, 25 P2d 162 (1933). Therefore, plaintiffs are entitled to interest on the disputed items commencing 60 days after the date liability was denied, and on the undisputed items commencing 60 days after the date liability was conceded.

Affirmed in part; reversed in part and remanded.