362 F.3d 593
 Suzanne L. DECKER, Trustee, Plaintiff-Appellant,
v.
ADVANTAGE FUND LTD., fka GFL Advantage Fund Ltd.; Genesee Fund Limited; Nelson Partners; Olympus Securities, Ltd.; RGC International Investors, LDC; Capital Ventures International, Defendants-Appellees.
Suzanne L. Decker, Trustee, Plaintiff-Appellant,
v.
Advantage Fund Ltd., fka GFL Advantage Fund Ltd., Defendant, and
Nelson Partners; Olympus Securities, Ltd.; Capital Ventures International, Defendants-Appellees.
 No. 01-17406.
 No. 01-17408.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted December 5, 2002.
 Filed March 29, 2004.
 
 Jeffrey C. Wurms, Esq., Oakland, CA, for the appellant.
 Harry S. Davis, Esq., New York, NY; Harvey L. Leiderman, and Frederick D. Holden, Esq., San Francisco, CA, for the appellees.
 Appeal from the United States District Court for the Northern District of California, Ronald M. Whyte, District Judge, Presiding. D.C. Nos. CV-01-20391-RMW, CV-01-20529-RMW, D.C. No. CV-01-20529-RMW.
 Before: BRUNETTI, TASHIMA, Circuit Judges, and EZRA,* District Judge.
 BRUNETTI, Circuit Judge:
 
 
 1
 Appellant Bankruptcy Trustee Suzanne Decker ("the Trustee") appeals the district court's Federal Rule of Civil Procedure 12(b)(6) dismissal of her action. The Trustee asserts two claims against all Appellees: one for avoidance of fraudulent transfers made in violation of California fraudulent transfer law and one for avoidance of fraudulent transfers made in violation of the Bankruptcy Code. The Trustee's third claim, asserted only against Appellees RGC International Investors, LDC, and Advantage Fund Ltd. ("RGC-Advantage Appellees"), is for a violation of section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). For the reasons stated in this opinion, we affirm.
 
 
 2
 Before proceeding to the merits of this case, we must address a jurisdictional issue. The notice of appeal in this case was not timely filed in the district court. Due to a mistake by the Trustee's attorney's agent, the notice was filed in the bankruptcy court such that it would have been timely had it been filed in the correct court. Pursuant to 28 U.S.C. § 1631, we have jurisdiction because (1) the bankruptcy court cannot exercise jurisdiction over the appeal from the district court, (2) jurisdiction would have existed in this court at the time the notice was misfiled, and (3) we deem it to be in the interests of justice to exercise jurisdiction in order to avoid a forfeiture of the Trustee's rights due to a mistake by her attorney's agent. See Rodriguez-Roman v. INS, 98 F.3d 416, 424 (9th Cir.1996) ("[W]ere we not to hear [Petitioner's] petition, he would be time-barred from seeking review.... That ... would be sufficient, in itself [to make exercising jurisdiction serve the interests of justice]."); cf. Portland Fed. Employees Credit Union v. Cumis Ins. Soc'y, Inc., 894 F.2d 1101, 1103 (9th Cir.1990) (holding that appellate jurisdiction exists under Fed. R.App. P. 4(a)(1) where notice of appeal was filed "with the wrong court").
 
 I. Background
 
 3
 As this case was dismissed under Federal Rule of Civil Procedure 12(b)(6), all well pleaded facts in the complaint must be taken as true. Gompper v. VISX, Inc., 298 F.3d 893, 894 (9th Cir.2002).
 
 
 4
 While JTS Corporation ("JTS"), a publicly traded company on the American Stock Exchange, was insolvent, it entered into agreements with Appellees to raise capital. JTS sold Series B and Series C preferred stock to Appellees for a total of $40 million. JTS and Appellees agreed that the preferred stock could later be converted into common stock at the lower of either (1) a fixed price or (2) a floating 15% discount off the average daily low trading price of JTS common stock for the five days preceding such conversion. The agreements also contained, however, an overriding limitation on that conversion right, a "conversion cap," which barred Series B and Series C stockholders from converting any stock if such conversion would cause their beneficial ownership of JTS common stock to exceed 4.9% of JTS's outstanding shares. Appellees eventually made the conversion at the 15% discount, obtaining $47 million worth of common stock in exchange for their $40 million investment. RGC-Advantage Appellees sold their JTS common stock within six months of obtaining it through the conversion. Ultimately, JTS was forced into Chapter 7 bankruptcy.
 
 
 5
 The Trustee filed a complaint in bankruptcy court to avoid and recover fraudulent transfers and for violations of section 16(b). The bankruptcy court granted Appellees' motion to dismiss the Trustee's claims. The district court affirmed the bankruptcy court and granted Appellees' motion to dismiss. The Trustee appeals.
 
 II. Discussion
 
 6
 A district court's decision to grant a motion to dismiss pursuant to Rule 12(b)(6) is reviewed de novo. O'Loghlin v. County of Orange, 229 F.3d 871, 874 (9th Cir.2000).
 
 A. The Claims for Avoidance of Transfer
 
 7
 The Bankruptcy Code provides that the Trustee can "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law." 11 U.S.C. § 544(b)(1). This includes California's fraudulent transfer law under section 3439.04 of the California Civil Code. Similarly, the Trustee can "avoid any transfer of an interest of the debtor in property ... if the debtor ... received less than a reasonably equivalent value in exchange for such transfer ... and was insolvent on the date that such transfer was made ... or became insolvent as a result of such transfer...." 11 U.S.C. § 548(a)(1)(B)(ii)(I).
 
 
 8
 At issue in both of the fraudulent transfer claims in this case is what constitutes "an interest of the debtor in property." Appellees assert that the unissued preferred stock that was transferred to them for $40 million does not constitute "an interest of the debtor in property." Their position is that unissued stock has no value to the corporation, as opposed to its shareholders, because stock only represents portions of equity in the corporation itself. The Trustee argues that this is too narrow a view of "an interest of the debtor in property," because "property" has a broad definition under numerous provisions of both state and federal law.
 
 
 9
 We agree with Appellees. While the Trustee is correct that "property" is broadly defined, what is really at issue is not just "property," but "an interest of the debtor in property." Appellees are correct that unissued stock is not an interest of the debtor corporation in property; it is merely equity in the corporation itself. In re Curry and Sorensen, Inc., 57 B.R. 824, 829 (B.A.P. 9th Cir.1986) ("In re Curry"). The appellants in In re Curry, much like here, sought to avoid the issuance of a number of shares of the debtor's capital stock to the company president as a fraudulent transfer under Bankruptcy Code section 548. The court affirmed the dismissal of the appellants' claim, stating:
 
 
 10
 A share of capital stock represents a unit of ownership interest and has no extrinsic value to the corporation itself. [Citations.] Since an action directed at recovery of corporate stock could only affect equitable ownership of the corporation and would not restore property to the estate or avoid an estate obligation, then it is not a transfer subject to question under Section 548.
 
 
 11
 
 Id.
 
 
 
 12
 The fraudulent transfer claims were therefore properly dismissed. Consequently, we need not reach the issue of whether Appellees received their shares for less than reasonably equivalent value.
 
 B. The Section 16(b) Claim
 
 13
 Section 16(b) liability for a short-swing sale applies to a stockholder if that stockholder is the beneficial owner of more than 10% of a voting class of stock. 15 U.S.C. § 78p(b). Under 17 C.F.R. section 240.13d-3(c), a stockholder who holds a convertible security (e.g., the preferred stock in the present case) is a beneficial owner of the stock for which the security may be converted (e.g., the common stock in the present case) if the security may be converted within sixty days. In the present case, RGC-Advantage Appellees were not the beneficial owners of more than 10% of the common stock because the convertible security (preferred stock) that they held was subject to a conversion cap that would bar conversion once the owner reached a threshold of 4.9% ownership. After that, the remaining preferred stock would not be allowed to be converted, and thus was not convertible under section 240.13d-3(c).
 
 
 14
 Moreover, the agreements under which RGC-Advantage Appellees obtained the convertible securities explicitly prevented them from ever obtaining the "right to acquire beneficial ownership of such security" under section 240.13d-3(d)(1)(I); thus they never obtained such status and are therefore not subject to section 16(b). The Trustee argues that this court's decision in Citadel Holding Corp. v. Roven, 26 F.3d 960 (9th Cir.1994), compels a contrary result. In Citadel Holding, the court noted that the former SEC Rules regulating short-swing abuse, "by failing to recognize the functional equivalence of derivative securities and the underlying securities, ... left open a significant potential for short-swing abuse in trading derivative securities." Id. at 964. Although the SEC had promulgated new rules to account for this loophole at the time Citadel Holding was decided, the court nonetheless was obligated to evaluate the case according to the SEC rules operative at the time of the disputed transactions. Id. In so doing, the court determined that, because the disputed options were not "presently exercisable," they were exempt from section 16(a)'s reporting purview. In 1991, the SEC specifically rewrote its rules interpreting section 16(a) in order to make "the acquisition of a derivative security [] a reportable event, whether or not the security is presently exercisable"; the Citadel Holding court noted therefore that "the new regulations, if applicable, clearly would have a significant impact on our analysis." Id.
 
 
 15
 Even under the more stringent SEC Rules, RGC-Advantage Appellees never reached the status of "beneficial owners." The agreements RGC Advantage Appellees entered into expressly prevented the conversion of their preferred stock once the owner reached the 4.9%-ownership threshold; these agreements therefore automatically stripped RGC-Advantage Appellees of their "right to acquire beneficial ownership of such security" once that threshold was reached and therefore protected them from section 16(b) liability, even under the more exacting SEC Rules. See Levy v. Southbrook Intern. Investments, Ltd., 263 F.3d 10, 15 (2d Cir.2001) (holding that section 240.13d-3(d)(1)(I) speaks to the "right," not the "ability," to acquire; because investor's "right to acquire" stock was at all times subject to a conversion cap, section 16(b) did not apply).
 
 
 16
 Accordingly, this claim was also properly dismissed.
 
 III. Conclusion
 
 17
 The district court's dismissal of the Trustee's complaint is AFFIRMED.
 
 
 18
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 Hon. David A. Ezra, Chief United States District Judge, District of Hawaii, sitting by designation